THE STATE ex rel. UNION ELECTRIC LIGHT & POWER COMPANY v. SAM A. BAKER et al., Members of Board of Equalization of State of Missouri, and J. T. WADDIL et al., Members of State Tax Commission.—293 S. W. 399.

Court en Banc, March 1, 1927.

1. **TAXATION: Exemption: All Property.** The policy of the law is that taxes shall be levied and collected for public purposes on all property within the territorial jurisdiction of the State, except property expressly enumerated as exempt. But before property may be taxed it must by law be subject to taxation.

2. ——: **Statutes: Strict Construction.** Revenue laws are to be strictly construed, but the doctrine should be applied with due regard to the legislative intention as expressed in the statute, and courts must endeavor by every rule of construction to ascertain the meaning and give full force and effect to every legislative enactment not obnoxious to constitutional provisions. But the legislative intention must be intelligently expressed.

3. ——: **Exemptions: Electric Power and Light Companies.** Section 13056, Revised Statutes 1919, as amended, Laws 1923, page 372, in designating "all property, real and personal, including the franchises" of an electric light and power company as "subject to taxation for state, county, municipal and other local purposes," plainly declared that no property of such a company is to be deemed as exempt from taxation.

4. ——: **Property of Electric Light & Power Company: Adequate Statutory Method.** Section 13056, as amended, Laws 1923, page 372, provides an adequate and lawful method for assessing the franchise of an electric light and power company, and of all of its property included in the statement required to be furnished to the State Auditor by Section 13002.

5. ——: ——: **Statement: Movable and All Other Property.** Section 13000, Revised Statutes 1919, which provides the method for fixing franchise values, proceeds on the theory that the property of an electric light and power company is assessed by the State Tax Commission, and the property included is not simply that specifically designated, but "all other movable property owned, used or leased" by such company, and that includes properties having, along with railroads, the common characteristic of traversing and extending in and through various counties, municipal townships and incorporated cities, towns and villages. And said section, when read in connection with Sections 13056 and 13002, requires a statement to be furnished to the State Auditor and the properties of such a company to be assessed "in like manner" as railroad property, and the same distinction is to be drawn between property directly and property indirectly or collaterally involved in the business of a company whose lines extend into different counties, townships and cities, which has often been pointed out by this court in decisions applying those statutes to railroad companies.

**6. STATEMENT: Movable and All Other Property: Construction of Statutes: By State Executive Officers.** The uniform construction for a long number of years placed on Sections 13056, 13002 and 13000, Revised Statutes 1919, as expressing the authority and pointing out workable methods of assessing the properties of electric light and power companies for purposes of taxation by the highest executive officers of the State, is entitled to great consideration.

**7. ———: ———: Return: In Like Manner: Workable Method.** The provisions of Section 13056, Revised Statutes 1919, as amended, Laws 1923, page 372, requiring an electric light and power company to make return of its property "in like manner" as a railroad company, means that it shall return its property of the same general character or class, that is, its transmission lines and all movable property necessarily appurtenant and directly used as a means of distributing electric energy, light, heat and power; and the prescription for such a return is not ambiguous or unworkable.

**8. ———: ———: Mileage Basis.** The apportionment of the assessed value of the properties of an electric light and power company for taxation upon a mileage basis to the counties through and into which its lines of transmission run, is not in the nature of a power conferred upon the State Board of Equalization, but a ministerial clerical duty required by the statute to be performed by the board before the record of its proceedings are filed with the State Auditor.

Corpus Juris-Cyc. References: **Statutes,** 36 Cyc., p. 1103, n. 96; p. 1119, n. 36; p. 1140, n. 64; p. 1141, n. 67; p. 1189, n. 76; p. 1190, n. 81. **Taxation,** 37 Cyc., p. 725, n. 35; p. 773, n. 47; p. 1044, n. 54 New.

*Certiorari.* ·

Writ quashed.

*Rassieur & Goodwin* for relator.

(1) There can be no lawful assessment of property except in the manner prescribed by law and of property designated by law for assessment. State ex rel. Koeln v. Lesser, 237 Mo. 310; Hannibal ex rel. v. Bowman, 98 Mo. App. 108; Leavell v. Blades, 237 Mo. 700; State Board of Tax Commrs. v. Railroad, 130 N. E. (Ind.) 642; Wallace v. Hughes, 171 N. W. 843. (2) Therefore as the statutes fail to designate the classes of property which respondents have assessed, for assessment by them their assessment is void. Sec. 13056, R. S. 1919, as amended Laws 1923, pp. 372-373. (3) The declaration in a statute that property shall be subject to taxation does not levy any tax. State ex rel. Koeln v. Lesser, 237 Mo. 321. (4) Where the method of assessment prescribed by law can by no possibility be conformed to, no tax can be levied. State ex rel. Union Elec. Co. v. Gehner, 286 S. W. 117. (5) Respondents have no power to apportion or certify the assessed value of electric power and light companies for taxation, by county and city authorities, on a wire mileage basis. Sec. 13056, R. S. 1919, as amended, Laws 1923, pp. 372-373; Secs. 13024,

13026, R. S. 1919. (6) Neither the State Board of Equalization nor the State Tax Commission has any legislative powers. Merchants Exchange v. Knott, 212 Mo. 616. (7) *Certiorari* is the proper remedy whereby to obtain relief from a void assessment. State ex rel. Armour Packing Co. v. Stephens, 146 Mo. 662; State ex rel. Compton v. Buder, 271 S. W. 770; State ex rel. Union Elec. Co. v. Gehner, 286 S. W. 117.

*North T. Gentry,* Attorney-General, and *George W. Crowder,* Assistant Attorney-General, for respondents.

(1) The Tax Commission and the State Board of Equalization assessed relator's distributable property in the manner provided for by law for the taxation of railroads, and the railroad statutes are not unworkable when resorted to for the manner of assessing the property of electric power and light companies. Laws 1923, p. 372; Secs. 13002, 13027, 13056, R. S. 1919. (a) Relator's contention, as made in this case, was passed on by this court, adversely to relator, in the case of State ex rel. Union Elec. Co. v. Gehner, 286 S. W. 117. (b) The ascertainment of what property is directly involved, and what is only indirectly involved, in the transmission of electric energy is the determination of a fact, and involves no legislative function. (c) The particularization employed in Secs. 13002, 13027, R. S. 1919, was not intended by the Legislature to be the conferring of a power, with limitations upon that power to tax only what was therein specified, but the undertaking to particularize was manifestly intended to be only illustrative of the method or manner of handling the property for taxation purposes. State ex rel. Union Elec. Co. v. Gehner, 286 S. W. 117. (2) The State's policy of taxation as expressed in both the Constitution, and the statutes, is that all property shall bear its just proportion of taxation for the support of the government. Constitution, Art. X, secs. 6, 7; Sec. 12752, R. S. 1919. (3) The theory that, in order to make a valid assessment, every species or particular kind of property must be specifically named in the statute, is erroneous. If such were true our system of taxation would be a threadbare fabric, and many kinds of property would, of necessity, go untaxed, for it is wholly impracticable, if not impossible, to name each particular kind of property which is to be taxed. In order to obviate such an injustice our taxing statutes make use of the term, "all other property," or equivalent terms. Laws 1923, p. 375. (a) The equivalent of this term is found in Sec. 13002, R. S. 1919, where it says "and all other movable property owned, used or leased;" and in Sec. 13027, where it says "all property, real, personal or mixed, not hereinbefore specified." (4) The action of the State Tax Com-

mission and the State Board of Equalization in assessing relator's distributable property, as shown by their records, was within the law. The writ of *certiorari* heretofore issued herein should be quashed, and relator's application be dismissed.

ATWOOD, J.—This is an original *certiorari* proceeding in which relator seeks to quash the orders, judgments, records and proceedings of the State Tax Commission and the State Board of Equalization pertaining to relator's assessment for the year 1926, on the ground that they are "unauthorized, unjust, illegal and void, and without authority and beyond the jurisdiction" of respondents.

Respondents filed return to our writ admitting certain formal averments of relator's petition, and alleging that respondent State Board of Equalization assessed, adjusted and equalized for taxation, for the taxes of 1926, all of relator's property except property essentially local, such as lands and buildings, supplies, tools, office furnishings and fixtures, motor vehicles, steam-heating equipment, money and notes, the said property so assessed having been duly returned by relator to respondent State Tax Commission and originally assessed by said Tax Commission without protest on the part of relator save as to valuations fixed thereon by said Tax Commission; that the final order of the State Board of Equalization fixing the valuation and assessment of said assessed property at the sum of $21,227,785, was made on the 19th day of October, 1926; that, following the making of said final order, and prior to the issuance of the writ herein, respondents made an apportionment of said valuation and assessment, as expressed in said final order, to the city of St. Louis and to the respective counties through which and into which relator's lines of transmission run, and have certified such apportionment to the county courts of said counties, and to the Assessor of the city of St. Louis, as authorized by law, particularly Section 13026, Revised Statutes 1919; that respondents made the assessment of said property according to the method provided, and in the manner prescribed by law for the assessment of railroad property, as prescribed in Article XIII, Chapter 119, particularly Section 13024, that is to say, respondents fixed, adjusted, equalized and assessed the valuation of relator's distributable property, and apportioned said assessed valuation to the several counties aforesaid, and to the city of St. Louis, according to the wire-mileage basis, apportioning to each such subdivision such part of the entire valuation as the number of miles of transmission lines within such subdivision bore to the entire mileage of relator's system within the State of Missouri; verified copies of relator's return to said Tax Commission, and certified copies of the apportionments made by said Board of Equalization being attached to said return. In their said return respondents also deny the allegations made in said petition, to

the effect, that there is no authority under the laws of Missouri for the procedure adopted and followed by respondents in making said assessment and apportionment, and deny the allegations, to the effect, that respondents, in making said assessment, valuation and apportionment, disregarded the law; but aver that the findings made by the Tax Commission, and by respondents as the State Board of Equalization, and all orders resulting therefrom were legal, and that in the making thereof respondents were performing their duty and acting within the scope of their powers as laid out by the law. Attached to said return are full and complete copies of the findings and orders, entries and minutes of said State Tax Commission and said State Board of Equalization pertinent and relevant to the issues herein.

Thereupon relator filed motion for judgment on the pleadings and record, containing specific requests as follows:

"*First*: To quash, set aside and for naught hold the order entered by respondents on the 19th day of October, 1926, being the final order of assessment of the property of relator, and all other orders and proceedings entered by respondents or the State Tax Commission relating to the assessment of the property of relator and which have heretofore been certified to this court.

"*Second*: To quash, set aside and for naught hold all the acts and proceedings of respondents mentioned and referred to in the return of respondents and relating to the assessment of the property of relator.

"*Third*: To quash, set aside and for naught hold the apportionment of the value placed by respondents on relator's property as made and certified to this court.

"*Fourth*: To quash, set aside and for naught hold all the acts and proceedings of respondents in reference to the apportionment of the valuation placed by respondents upon relator's property which are mentioned and referred to in the return of respondents heretofore filed herein."

The grounds for said motion are therein stated as follows:

"(a)  That the statutes of this State fail to designate the specific property assessed by respondents for assessment by respondents.

"(b)  That the statutes of this State fail to designate any specific property of relator for assessment by respondents.

"(c)  The method of assessment designated by Section 13056, Revised Statutes 1919, as amended, Laws 1923, pages 372-373, is indefinite, uncertain and unworkable, and confers no jurisdiction upon respondents to make the assessment which they have attempted to make herein.

"(d)  That Section 13002, Revised Statutes 1919, relating to the assessment of railroad property, is unworkable when applied to the

property of relator and confers no jurisdiction upon respondents to make the assessment which they have attempted to make herein.

"(e)   That it appears upon the face of the pleadings and record herein that respondents were without power or authority to assess the specific portions of relator's property which they have attempted to assess.

"(f)   That it appears upon the face of the pleadings and record herein that the action and orders of respondents were erroneous, illegal and void.

"(g)   That it appears upon the face of the pleadings and record herein that the respondents are without jurisdiction to assess the portions of relator's property which they have attempted to assess herein.

"(h)   That Section 13056, Revised Statutes 1919, as amended, fails to provide any method for the apportionment of the valuation placed by respondents on relator's property.

"(i)   That Section 13024, Revised Statutes 1919, relating to the apportionment of valuations placed on railroad property, is unworkable when applied to the property of relator, and confers no jurisdiction on respondents to make the apportionment which they have attempted to make herein.

"(j)   That it appears upon the face of the pleadings and record herein that respondents are without jurisdiction to apportion the valuation which they have placed upon the property of relator in the manner in which they have attempted to apportion same, or in any manner whatever."

It is the well settled policy of our law that taxes shall be levied and collected for public purposes on all property within the territorial jurisdiction of the State, except that expressly enumerated as exempt. [Sections 1, 2, 3, 6 and 7 of Article X, Constitution of Missouri; Sections 12752, 12753, 12754 and 12756, Revised Statutes 1919.] It is equally well settled, however, that before property may be taxed it must by law be subjected to taxation.   [Valle v. Ziegler, 84 Mo. 219; Leavell v. Blades, 237 Mo. l. c. 700; State ex rel. Am. Cent. Ins. Co. v. Gehner, 280 S. W. l. c. 419; State ex rel. Koeln v. Lesser, 237 Mo. l. c. 318.]

In deciding the latter case we said: "Under our system of taxation there can be no lawful collection of a tax until there is a lawful assessment, and there can be no lawful assessment except in the manner prescribed by law and of property designated by law for that purpose."

We understand the gist of relator's contention to be that, as far as respondents are concerned, no lawful manner of assessing its property has been provided.   The assessment here complained of was made by respondent State Tax Commission pursuant to Section 13056,

Revised Statutes 1919, as amended, Laws 1923, pages 372-3.  The section is as follows, amendatory matter shown in italics:

"All bridges over streams dividing this state from any other state owned, controlled, managed or leased by any person, corporation, railroad company or joint stock company, and all bridges across or over navigable streams within this state, where the charge is made for crossing the same, which are now constructed, which are in the course of construction, or which shall hereafter be constructed, and all property, real and personal, including the franchises owned by telegraph, telephone, *electric power and light companies, electric transmission lines, oil pipe lines,* and express companies, shall be subject to taxation for the state, county, municipal and other local purposes to the same extent as the property of private persons.  And taxes levied thereon shall be levied and collected in the manner as is now or may hereafter be provided by law for the taxation of railroad property in this state, and county courts, and the county and state boards of equalization are hereby required to perform the same duties and are given the same powers in assessing, equalizing and adjusting the taxes on the property set forth in this section as the said courts and boards of equalization have or may hereafter be empowered with in assessing, equalizing, and adjusting the taxes on railroad property; and the president or other chief officer of any such bridge, telegraph, telephone, *electric power and light companies, electric transmission lines, oil pipe lines,* or express company, or the owner of any such toll bridge, is hereby required to render statements of the property of such bridge, telegraph, telephone, *electric power and light companies, electric transmission lines, oil pipe lines,* or express companies in like manner as the president, or other chief officer of the railroad company is now or may hereafter be required to render for the taxation of railroad property."

As a general rule revenue laws are to be strictly construed, but the doctrine of strict construction should be applied with due regard to the intention of the Legislature as expressed in the statute, and with a view to promoting the object of the statute.  [36 Cyc. 1189-1190.] It is the duty of the courts to endeavor by every rule of construction to ascertain the meaning of and give full force and effect to every legislative enactment not obnoxious to constitutional provisions, but the legislative intent must be intelligibly expressed.  [State ex inf. v. Street Ry. Co., 146 Mo. l. c. 168.]

The policy and purpose of this statute is indicated in the first sentence which plainly designates "all property, real and personal, including the franchises" of such companies as relator, as "subject to taxation for state, county, municipal and other local purposes." "All property" is here designated for taxation and no exemptions are enumerated.  The power of original assessment included in the powers

above given to the State Board of Equalization was exclusively given to the State Tax Commission by subdivision 6 of Section 12847, Revised Statutes 1919. As to the exercise of this power the State Tax Commission's authority is the same as that originally conferred by this section on the State Board of Equalization. Under this section, therefore, respondent State Tax Commission has the same duties and powers in assessing, and respondent State Board of Equalization has the same duties and powers in equalizing and adjusting, "the taxes on the property set forth in this section as the said courts and boards of equalization have or may hereafter be empowered with in assessing, equalizing and adjusting the taxes on railroad property;" and relator's president or other chief officer is required to render statements of its property "in like manner" as the president or other chief officer of a railroad company is required to render for the taxation of railroad property. We must, therefore, examine the statutes pertaining to the assessment of railroad property before we can determine whether or not the plan herein provided for the assessment of relator's property is workable.

Section 13002, Revised Statutes 1919, relating to the statement that a railroad company shall furnish to the State Auditor, is as follows:

"On or before the first day of January in each and every year, the president or other chief officer of every railroad company whose road is now or which shall hereafter become so far completed and in operation as to run locomotive engines, with freight or passenger cars thereon, shall furnish to the state auditor a statement, duly subscribed and sworn to by said president or other chief officer, before some officer authorized to administer oaths, setting out in detail the total length of their road so far as completed, including branch or leased roads, the entire length in this state, and the length of double or side-tracks, with depots, water tanks and turntables, the length of such road, double or sidetracks in each county, municipal township, incorporated city, town or village through or in which it is located in this state; the total number of engines and cars of every kind and description, including all palace or sleeping cars, passenger and freight cars, and all other movable property owned, used or leased by them on the first day of June in each year, and the actual cash value thereof."

The foregoing specifications of property taken by themselves are not absolutely clear, but as we said in State ex rel. v. St. Louis & S. F. Ry. Co., 117 Mo. l. c. 7, the uncertainty is to a large extent removed when read in connection with Section 13027, Revised Statutes 1919, a statute *in pari materia,* which is as follow:

"All property, real, personal or mixed, including lands, machine and workshops, roundhouses, warehouses and other buildings, goods, chattels and office furniture of whatever kind, owned or controlled by any railroad company or corporation in this state not hereinbefore

specified, shall be assessed by the proper assessors in the several counties, cities, incorporated towns and villages wherein such property is located, under the general revenue laws of the state and the municipal laws regulating the assessments of other local property in such counties, cities, incorporated towns and villages, respectively, but the taxes on the property so assessed shall be levied and collected according to the provisions of this article.''

In State ex rel. v. Hannibal & St. J. Railroad Co., 135 Mo. 618, we referred to the property designated in the first of these two statutes as ''distributable'' property, and that designated in the second as ''local'' property. A distinction thus created between these two classes of property, for purposes of assessment and based upon the nature of the uses to which they are devoted, was indicated in State ex rel. v. C. R. I. & P. Ry. Co., 162 Mo. 1. c. 394, as follows:

''The theory of the system of taxing railroads, as contained in our statute, seems to be that the railroad with all the necessary appurtenances to its efficient equipment as a means of traffic, is to be taken as a whole and assessed for taxation by the State Board of Equalization. That does not, however, include property that is used by a railroad corporation as a collateral facility to its business, such as workshops, etc., nor property held for purposes other than those of a carrier, all of which is subject to taxation by the local authorities.''

In State ex rel. v. Hannibal & St. J. Railroad Co. *supra,* Judge MACFARLANE, speaking for this court *in banc* with reference to the statement required by the first statute, now Section 13002 above quoted, said: ''This statement contains the basis for the action of the board in making the assessment; and the items of property included in the statement make up the railroad or distributable prop·erty.''

Now it may be that relator, an electric power and light company engaged in the business of generating and distributing light, heat and power as a public utility, operates no locomotive engines with freight or passenger cars, and neither owns, uses nor leases any roads, double or sidetracks, depots, water tanks or turntables, engines or cars of any kind, but the very nature of its business requires it to own, use, or lease many miles of right of way with poles, cross-arms, wires and other facilities and equipment located thereon and thereover, as well as other movable property, and the first sentence of Section 13056 clearly designates all its property as subject to taxation.

Even if this be conceded we take it that relator would still contend that all its property, for which a lawful method of assessment has been provided, should be returned for local assessment. In State ex rel. Union Electric Co. v. Gehner, 286 S. W. 1. c. 119-120, it was recently ruled by this court *in banc*, in construing above Section 13056 and other statutes, that ''the sole power to assess the franchises in

question is by the statute conferred on the State Tax Commission" and "the action of the Assessor of the City of St. Louis in assessing the franchises of the relator corporations was entirely nugatory, because authority on his part so to do was wholly lacking." We have thus previously and specifically ruled that Section 13056, Revised Statutes 1919, as amended, Laws 1923, 372-373, provides an adequate and lawful method for assessing relator's franchise by the State Tax Commission. We think the ruling is sound and from it we might conclude that an adequate and lawful method has been provided for the assessment of all of relator's property included in the statement required to be furnished the State Auditor by Section 13002, because Section 13000, Revised Statutes 1919, which provides the method for fixing franchise values proceeds on the theory that relator's property is assessed by the State Tax Commission.

But relator insists that the statutes "fail to designate the specific property assessed by respondents for assessment by respondents." Again, we might say this point should be ruled against relator on the authority of State ex rel. Union Electric Co. v. Gehner, supra, because "franchises" are nowhere mentioned in amended Section 13056 except in the first sentence, which also designates all property of the persons, companies and corporations there included as subject to taxation. The reason for our previous ruling is found in the apparent purpose and meaning of amended Section 13056 and Section 13002. If relator neither owns, uses nor leases any railroad property its president or other chief officer is of course not required to include railroad property in his statement furnished the State Auditor, but he is required to render a statement of such property as relator does own, use or lease on the first day of June in each year, "in like manner" as the president, or other chief officer of the railroad company is now or may hereafter be required to render for the taxation of railroad property. The question is not whether the statutes specifically enumerate every item or class of relator's property for inclusion in the statement relator should furnish the State Auditor, but whether relator is thereby advised with reasonable certainty what property shall be included in such statement. Now what must be included in the railroad company's statement under Section 13002? In State ex rel. v. Metropolitan St. Ry. Co., 161 Mo. l. c. 197, we said "the roadbed, rolling-stock and other movable property," and we there designated such as "distributable" property. In State ex rel. v. C. R. I. & P. Ry. Co., 162 Mo. l. c. 394, heretofore cited and quoted from, we said that the theory of the system of taxing railroads as contained in this statute "seems to be that the railroad with all the necessary appurtenances to its efficient equipment as a means of traffic, is to be taken as a whole and assessed for taxation by the State Board of Equalization," and further held that such assessment should not "in-

clude property that is used by a railroad corporation as a collateral facility to its business, such as workshops, etc., nor property held for purposes other than those of a carrier, all of which is subject to taxation by the local authorities.'' A clear distinction is thus drawn between property *directly and that indirectly or collaterally* involved in the business of a railroad which traverses counties, municipal townships and incorporated cities, towns and villages. The business of distributing light, heat and power by transmission lines and their necessary appurtenances has the same inherent characteristic of traversing counties, municipal townships, and incorporated cities, towns and villages, and when the statute requires its president or other chief officer to render a statement of its property ''in like manner'' as a railroad president or chief officer, we think he should be guided by this same distinction which we have heretofore recognized as controlling in the return of railroad property. Nor do we conceive that the scope of Section 13002 is limited to the property therein specifically designated, namely, roads, double or sidetracks, depots, water tanks and turntables, engines and cars. The designation of property herein concludes with the general clause, ''and all other movable property owned, used or leased by them'' etc. The rule of *ejusdem generis* is applicable and the words ''all other movable property'' clearly mean property of the same general nature or class as that previously specified, that is, property directly used and necessary to the railroad's efficient equipment as a means of traffic. [36 Cyc, 1119.] This statute has been in force for many years and we are not advised that its validity has ever here been drawn in question on the ground that the method provided is ambiguous or unworkable in the assessment of this class of railroad property. Furthermore, Section 13056, as originally enacted (Laws 1877, pp. 391-2), was limited to bridge, telegraph and express companies. Telephone companies were subsequently included (Laws 1901, pp. 223-4), and in 1923 electric power and light companies, electric transmission lines and oil pipe-lines were included by the amendment now under consideration. The properties directly involved in the prosecution of the various kinds of business enumerated in this statute, like that of railroads, all have the common characteristic of traversing and extending in and through various counties, municipal townships and incorporated cities, towns and villages. Through all these years this statute has been uniformly administered by respondents in accordance with its provisions without question as to its meaning, until the present suit arose apparently out of relator's exception to the valuation placed by respondents on this class of relator's property. The executive construction thus placed on this statute is also entitled to great consideration. The doctrine is thus stated in 36 Cyc. pages 1140-1141: ''The construction placed upon a statute by the officers whose duty it is to execute it

is entitled to great consideration, expecially if such construction has been made by the highest officers in the executive department of the government, or has been observed and acted upon for many years, and such construction should not be disregarded or overturned unless it is clearly erroneous."

The provision of amended Section 13056 that relator make return of its property "in like manner" as a railroad company means that it shall return its property of the same general character or class, that is, its transmission lines and all movable property necessarily appurtenant and directly used in their efficient equipment as a means of distributing electrical energy, light, heat and power. We do not regard the method of return here provided as ambiguous or unworkable in the assessment of relator's property by the State Tax Commission.

Relator says that a comparison of amended Section 13056 with Sections 13020, 13021 and 13022 (the act relating to the taxation of street car companies), demonstrates that the former section is insufficient to confer jurisdiction upon respondents to assess the property in question. The street car act, however, is characterized by a new and distinct purpose. Under the railroad act, as we have heretofore observed, only a part or class of railroad property could be assessed by the State Board of Equalization, the remaining class or portion being subject to local assessment. By the street car act *all* property of the street car companies was required to be returned to the State Auditor for assessment by the State Board of Equalization. It may be conceded that the General Assembly might have provided for the assessment of the property of electric power and light companies, electric transmission lines, etc., by a separate act similar to the street car act, or some other act, but we are not concerned with such possibilities. Our only concern is rightly to determine the validity of this particular act as amended.

Relator finally urges that respondents had "no power to apportion the assessed value of electric power and light companies for taxation upon a wire mileage basis." Respondents' amended return alleges that they apportioned the value of relator's property assessed by the Tax Commission and equalized and adjusted by the Board of Equalization as provided by Section 13024, Revised States 1919, and certified copies of said apportionments are attached to said return. This section chiefly provides that: "said board shall apportion the aggregate value of all property hereinbefore specified belonging to or under the control of each railroad company, to each county, municipal township, city or incorporated town in which such road is located, according to the ratio which the number of miles of such road completed in such county, municipal township, city or incorporated town shall bear to the whole length of such road in this state."

In State ex rel. v. Railroads, 215 Mo. 479, l. c. 494, we referred to this as the "mileage rule" for assessment of railroad property by the State Board of Equalization. It was first promulgated as Section 8 of the original act passed in 1871, entitled, "An Act to provide for a uniform system of assessing and collecting taxes on Railroads" (Laws 1871, pp. 56-59), and is clearly part and parcel of "this scheme for the assessment of distributable railroad property," so called in State ex rel. v. Stone, 119 Mo. l. c. 677. The apportionment here contemplated was not in the nature of a power conferred upon the Board of Equalization, but rather a ministerial clerical duty required of that body before the record of its proceedings should be filed with the State Auditor. It seemingly marked the completion of the assessment. [3 Cooley on Taxation (4 Ed.) sec. 1171.] It is still incumbent upon that body to perform this duty notwithstanding the power of original assessment has been transferred to the Tax Commission, and being a necessary clerical duty in the application of a rule of assessment its performance is implied in the express provisions of Section 13056 as amended.

Relator criticises the form of respondents' certificates wherein, it says, "they have assumed to certify to the county clerks of the several counties, and to the Commissioner of Finance of the City of St. Louis, their apportionment of their valuations upon relator's property." It is true that Section 13026, Revised Statutes 1919, provides that, "the state auditor shall certify to the secretaries of the respective railroad companies, and also to the county courts of the proper counties, the action of said board," and for aught that appears in the record before us the State Auditor may have properly done so. Relator has not made the State Auditor as such a party to this proceeding, or properly questioned the validity of such certification. Under the pleadings it is not a material issue in the case, and relator's criticism is to no purpose.

For the reasons above stated it is ordered that the writ be quashed. *White, Ragland* and *Gantt, JJ.,* concur; *Blair, C. J.,* dissents; *Graves* and *Walker, JJ.,* absent.