STATE OF MISSOURI at the Relation of THE SCHOOL DISTRICT OF KANSAS CITY, Relator, v. J. T. WADDILL, FORREST SMITH and JESSIE MITCHELL, composing and constituting the STATE TAX COMMISSION OF MISSOURI, and the STATE TAX COMMISSION.—52 S. W. (2d) 476.

Court en Banc, August 5, 1932.

*McCune, Caldwell & Downing* for relator.

*Stratton Shartel,* Attorney-General, and *Albert Miller,* Assistant Attorney-General, for respondents.

1120

RAGLAND, J.—This is an original proceeding in mandamus. The petition for the writ, filed by relator school district of Kansas City, on April 21, 1932, is in two counts. The first count concludes with a prayer for the issuance of an alternative writ commanding the respondent, State Tax Commission, "to assess the property of the Kansas City Public Service Company for the year 1930 within the territorial limits of relator, and to issue its additional or supplemental certificate to the county court of Jackson County, stating the assessed value of the property of said Kansas City Public Service Company in said school district," or show cause, etc. The second count asks the issuance of a writ to compel the performance of like acts for the year 1931. By agreement of the parties, respondent made return to the petition as and for the alternative writ, the issuance of the writ being waived. Upon the return coming in, relator filed its motion for judgment on the pleadings. The facts, therefore, are to be gathered from the return and the allegations of the petition not denied.

The Kansas City Public Service Company (hereinafter called the Service Company) is a corporation and owns and operates a street railroad in Jackson County. The greater portion of its property lies within the corporate limits of Kansas City, but one or more of its

lines extend beyond those limits into Jackson County and thence into the city of Independence. A portion of its street railroad lies within the territorial limits of relator school district, but the boundaries of the district and those of Kansas City are not co-extensive or coterminus.

The respondent in connection with the State Board of Equalization, in 1930 and again in 1931, assessed, adjusted and equalized the aggregate valuation of the property of the Service Company and then apportioned such aggregate value to Jackson County, Kansas City and Independence according to the ratio which the number of miles of the street railroad completed in the county and cities respectively bore to the whole length of the road. After the making of such apportionments, the respondent certified the same to the County Court of Jackson County. Neither it nor the State Board of Equalization made any apportionment of such aggregate value to relator or any other school district, for the reason, as respondent asserts in its return, that neither had any authority or power so to do.

In the assessment of street railroads in Jackson County, the proceeding outlined in the preceding paragraph has been in all respects followed since the passage, in 1897, of an act "to provide for a more uniform assessment and taxation of street railroads," now embodied in Sections 10018, 10019 and 10020, Revised Statutes 1929. In construing the Act this court in State ex rel. Gottlieb v. Railway Company, 161 Mo. 188, 61 S. W. 603, held that it required school taxes to be levied separately for each district in which any part of a street railroad property was located, in accordance with the local rates respectively of such districts. Recently the owner of the street railroad of Jackson County, the Service Company, became curious as to how a school tax could be levied upon its property in relator school district on the basis of the local rate which obtained in the district, when there had been neither a separate assessment of that part of its property nor an apportionment to the district of the value of its property as a whole. Upon inquiry it found that, notwithstanding there was no authorizing statute, the County Clerk of Jackson County had been bridging the gap by making apportionments according to methods of his own devising. The Service Company thereupon instituted a suit in the circuit court, which is still pending, to enjoin the collection of the school taxes levied against its property for the years 1930 and 1931 for relator district. Relator in turn initiated this proceeding to compel the Tax Commission to assess the street railroad property lying within its territorial limits for the years 1930 and 1931 and certify its assessments to the County Court of Jackson County.

Is it the duty of the State Tax Commission to separately assess the portion of the Service Company's property which lies within the territorial limits of relator school district? If no such duty devolves

upon the commission, is it then the duty of the State Board of Equalization to allocate to the district, as a basis for levying school taxes, a portion of the assessed aggregate value of the Service Company's property? An answer to the first of these questions will determine whether or not our peremptory writ should go, but the conclusion as to what that answer should be can properly be arrived at only by a consideration of both questions.

■ "The assessment and levy of taxes in this State is purely statutory." [State ex rel. v. Thompson, 149 Mo. 441, 445, 51 S. W. 98.] "The assessors have no jurisdiction to assess property otherwise than as the statute prescribes." [Abbott v. Lindenbower, 42 Mo. 162, 168.] "Under our system of taxation . . . there can be no lawful assessment except in the manner prescribed by law." [State ex rel. v. Lesser, 237 Mo. 310, 318, 141 S. W. 888.] The answers to the questions propounded in the preceding paragraph must therefore be found in applicable tax statutes. In referring to those statutes, the section numbering employed in the Revision of 1929 will be used.

Section 10018 requires the chief officer of every street railroad company, on or before the first day of January of each year, to furnish the State Auditor (now the State Tax Commission) a sworn statement "setting out in detail the full length of the line, . . . including branch or leased lines, the entire length in this State, the length of double or sidetracks, the length of such line located upon real estate to which such company may have title as right of way, the length of such line located upon the public streets or thoroughfares of any city, together with all cars, motors, grip cars, live stock, electric trolley wires, cables, cable conduits, power houses, stables and all other property, real, personal, or mixed, owned, used or leased on the first day of June, which may be used in or incident to the operation of such street railroad, *the length of such line in each county, municipal township and city* through or in which it is locted, and the cash value of the several items embraced in the statement."

Section 10019 provides that the property so returned to the State Auditor "shall be subject to taxation for State, county, municipal and other purposes to the same extent as the real and personal property of private persons, and the same shall be assessed, apportioned, certified and the taxes thereon levied and collected at the time and in the manner which is now or may hereafter be provided by law for the assessment and taxation of other railroad property."

Section 10020 recites that it is the purpose of the two preceding sections to make the property of street railroads assessable and taxable in the same manner provided by law for the assessment and taxation of other railroad property.

■ Under the provisions of the three sections just referred to and quoted in part, it is too plain to admit of controversy that *all* the

property of a street railroad company, used in or incident to the operation of its street railroad, is to be *assessed, apportioned, certified and the taxes thereon levied, in the manner provided by law for the assessment and taxation of other railroad property.* The provisions for the assessment and taxation of "other railroad property" are outlined in Sections 10012, 10017, 10022, 10024, 10025, 10028 and 10029, Revised Statutes 1929. According to these the property of a railroad company is divided into two classes. The first consists of the railroad, side tracks, depots, water tanks, turntables, rolling stock, etc., all of which have been denominated by this court in construing the statutes as the distributable property of a railroad company. The second class consists of all property not included in the first, such as roundhouses, workshops, etc., referred to in Section 10025 as "local property." This latter class is required to be assessed by local assessing officer, and need not be further considered at this time. The method prescribed for the assessment and taxation of the distributable property is our immediate concern.

The chief officer of every railroad company is required to furnish the State Auditor (now the State Tax Commission) on or before the first day of January in each year, a sworn statement, "setting out in detail the total length of their road . . . including branch or leased roads, the entire length in this state, and the length of double or sidetracks, with depots, water tanks and turntables, *the length of such road, double or sidetracks in each county, municipal township, incorporated city, town or village* through or in which it is located in this state; the total number of engines, and cars . . . and all other movable property owned, used or leased by them on the first day of June in each year, and the actual cash value thereof." [Sec. 10012.] With such a return as the basis, the State Tax Commission is required to assess the *aggregate valuation* of the property of each railroad company. [Sec. 10017.] After having equalized the aggregate valuations of the properties of the various railroad companies, the State Board of Equalization is directed to apportion the aggregate value of the property of each railroad company "to each county, municipal township, city or incorporated town in which such road is located, according to the ratio which the number of miles completed in such county, municipal township, city or incorporated town shall bear to the whole length of the road in this state." [Sec. 10022.] These proceedings of the Tax Commission and the State Board of Equalization, respectively, are required to be certified to the county courts of the counties in which railroad properties or some part of them are respectively located. [Sec. 10024.] Upon the apportionments of the aggregate value of the property of each railroad company, so made and certified to it, the county court is directed to levy

taxes for state, county, municipal township, city, incorporated town and village and school purposes—all, except the latter, at the same rates respectively levied on other property. [Sec. 10028.] Taxes for school purposes are directed to be levied at an average rate. Section 10029 provides:

"Such average rate for school purposes shall be ascertained by adding together the local rates of the several school districts in the county, and by dividing the sum thus obtained by the whole number of districts levying a tax for school purposes, and shall cause to be charged to said railroad companies taxes for school purposes at said average rate on the proportionate value of said railroad property so certified to the county court by the state auditor under the provisions of this article, and the said clerk shall apportion the said taxes for school purposes, so levied and collected, among all the school districts in his county, in proportion to the enumeration returns of said districts."

■ Stated more concisely, the method prescribed by statute for the assessment and taxation of the distributable property of a railroad company is this: The State Tax Commission shall assess the aggregate valuation of such property, regardless of its location in this State. The State Board of Equalization shall then equalize such aggregate valuation and apportion it, on a mileage basis to the counties, municipal townships, cities and towns in which the property or some part of it is located, and certify the result of its action to the county courts of the proper counties. On the aggregate value apportioned to a county, the county court of such county shall levy taxes for county purposes at the same rate levied on other property in the county for such purposes; on the apportionments made to municipal townships, cities and towns respectively, it shall levy taxes at the same rates levied on other property within the territorial boundaries of those subdivisions and agencies for their respective purposes; and *on the apportionment made to the county* it shall make ʃ further levy of taxes for school purposes—at the average rate as heretofore defined. The school taxes so levied shall be distributed when collected, not on a mileage basis to the school districts in which some part of the railroad is located, but to all the districts in the county, the fund to be apportioned among them according to their enumeration returns.

■ A reading of the three sections relating to the assessment and taxation of the property of street railroad companies in connection with those prescribing the method for the assessment and taxation of the property of other railroad companies leaves no doubt but that the property of the former, as described in said Section 10018, is required to be "assessed, apportioned, certified and the taxes thereon levied" in the manner prescribed for the assessment and taxation of

the *distributable* property of the latter. With respect to the manner so prescribed there is no provision for the State Tax Commission to separately assess for each school district into which a street railroad extends the part of the property of the company owning the road which is located in such district. Nor is there any for the State Board of Equalization to make apportionments of the aggregate value to school districts. On the contrary the affirmative provisions of the statutes negative the doing of either of these things. It follows that the questions touching the duties of the Tax Commission and the State Board of Equalization respectively, as heretofore stated, must be answered in the negative.

Relator bases its claim to the relief it seeks on the construction placed on Section 10019 in State ex rel. Gottlieb v. Railroad Company, supra, in which it was held that taxes for school purposes should be levied upon the property of a street railroad company located in a given school district at the same rate for which taxes for school purposes were levied upon the property of private persons in such district. Relator says to us, in effect, that as the statute fails to provide any basis for so levying school taxes on the property of a street railroad company, it is incumbent upon you to devise ways and means for making the statute as you have construed it effective and workable. In order to do that it would be necessary for us to add at the end of the last sentence in said Section 10019 one or the other of the following provisos: "Provided, that for school purposes the part of the property of a street railroad company located in any school district shall be assessed and taxed as other property in such district;" "Provided, that for the purpose of levying school taxes apportionments of the aggregate value of the property of every street railroad company shall be made to school districts in the same manner and on the same basis as apportionments are required to be made to counties, municipal townships, cities and incorporated towns." We cannot so rewrite the statute without usurping power that has been confided to the Legislature.

The construction put upon said Section 10019 by the Gottlieb case will not bear analysis. It is made to turn upon general language found in the beginning of the section, namely: "The said property (of a street railroad company) shall be subject to taxation for state, county, municipal and other purposes to the same extent as the real or personal property of private persons." This provision as a matter of fact serves no purpose. The property of street railroad companies, though devoted to a public use, is notwithstanding private property. Under the Constitution it is not in any respect exempt from taxation; it must be taxed just like all other private property, that is, in proportion to its value. But whatever the purpose intended this general

language cannot under any rule of construction be regarded as limiting or modifying the specific provision immediately following it. The former merely provides that property of street railroad companies shall be subject to taxation to the same extent as other property; the latter points out the particular manner in which the property shall be assessed and taxed.

There is no conflict, however, between the general language and the specific provision. Private property lying in different school districts is rarely taxed for school purposes at the same rate. The property of A situated in school district No. 1 may be taxed at the rate of $1.15 on the one hundred dollars valuation; that of B in school district No. 2 at only forty cents. In order to determine the extent to which the property in all school districts in a county, considered en masse, is taxed for school purposes, the average of the rates which obtain in the several school districts must be accepted as the gauge. And so the aggregate value of the property of a street railroad company, apportioned to a county to be taxed for the benefit of all the school districts in the county, when taxed for school purposes at the average rate is subjected to taxation for those purposes to the same extent as the property of private persons.

We followed the Gottlieb case with reluctance in the recent case of Kansas City Public Service Co. v. Ranson, 328 Mo. 524, 41 S. W. (2d) 169. But there was nothing in the facts of the latter case to bring to our attention the consequences which logically and necessarily flow from the construction effected by the former. There was no suggestion that the statute under the construction placed upon it in the Gottlieb case was unworkable unless the county clerk or some one else supplied a hiatus by making apportionments to school districts. If we continue to adhere to that construction the school districts of the State will from now on be deprived of the benefits that would otherwise accrue to them from the taxation of street railroad property, unless the Legislature comes to their rescue. For that reason, and for the further reason that the construction is palpably erroneous, we are of the opinion that the Gottlieb case and the Ranson case which followed it should both be overruled, and that is accordingly done.

In view of the conclusions reached herein the relief sought by the relator must be denied. The alternative writ is quashed. All concur.