STATE OF MISSOURI at the relation of CLIFFORD T. HALFERTY, Collector of Revenue of Clay County, Appellant, v. THE KANSAS CITY POWER & LIGHT COMPANY, a Corporation.—145 S. W. (2d) 116.

Division Two, December 3, 1940.

*Conn Withers, Leslie E. Bates* and *Lawson & Hale* for appellant.

1072

*Johnson, Lucas, Graves & Fane* and *Alan F. Wherritt* for respondent.

COOLEY, C.—This is an action by the Collector of Revenue of Clay County to recover alleged delinquent taxes of Kansas City Light & Power Company, defendant. The trial court sustained defendant's general demurrer to the plaintiff's petition. Plaintiff declined to plead further. ██ His petition was dismissed and he appeals. The appeal involves construction of certain revenue laws of the State, hence our appellate jurisdiction.

The petition alleges Halferty's official character; that defendant was and is a public utility corporation engaged in producing and selling electrical energy to the public and distributing same over a system of transmission lines and other distributing equipment in the county under the supervision and control of the Public Service Commission; that it owned transmission lines and other distributing equipment within the territory comprising Public Water Supply District No. 1, of Clay County (hereinafter for convenience referred to as the water district), alleged to be a "public political corporation" organized pursuant to Laws of Missouri, 1935, p. 327 et seq.; that on June 1st, 1935, defendant had within the water district 265.65 miles of wire transmission lines and that same was subject to assessment and levy of tax for the uses of the water district for the year 1936; that the per mile value of said property in the water district on June 1st, 1935, as fixed by the State Tax Commission and the State Board of Equalization was $2,691.95, making the aggregate value of defendant's property in the district $715,117; that there was assessed and levied against said property for the year 1936, for the uses and purposes of the district, taxes in the sum of $1,072.62, which defendant has refused to pay. The petition prays judgment for said tax, with interest and penalties and attorney fees.

The legislative act under which the water district exists (Laws 1935, p. 327 et seq.) provides (Sec. 2) such districts shall be "politi-

cal corporations'' of the State and (Sec. 3) the territory to be included may be wholly within one or more than one county, may take in school districts or parts thereof and cities that do not have a waterworks system, but the territory must be contiguous. By Sec. 5 of the act the district is given power (among others) to contract indebtedness and issue general or special obligation bonds, or both, therefor, as provided in the act, and ''to certify to the county court or county courts of the county or counties within which such district is situate, the amount or amounts to be provided by the levy of a tax upon all taxable property within the district'' to create an interest and sinking fund for payment of general obligation bonds (and other purposes not here material). By Sec. 12 it is provided that on or before May 10th each year the board of directors of the district shall estimate the amount of taxes necessary to be levied for the purposes of the district as specified in Sec. 5, and cause its clerk to certify same to the clerk or clerks of the county or counties in which the district is situate. Thereupon the county' court or courts of the county or counties ''shall proceed to levy a tax upon all taxable property within the district, sufficient to provide the funds required by such estimates.'' Section 13 authorizes the district to borrow money and issue bonds therefor and makes elaborate provisions as to how they may be issued and paid. They may be general obligation bonds or special obligation bonds. If general ''a direct tax may be levied upon all taxable property within the district'' for their payment, and before issuing such bonds the board of directors must provide for the collection of an annual tax ''to be levied upon all taxable property within the district, sufficient to pay the interest . . .'' as it falls due and provide a sinking fund for retirement of the bonds. We doubt if this section has any bearing on the present issue. It does not seem to be contended that the board of directors of the district could levy a direct tax on the distributable property of defendant here involved. As to the provisions of said Sec. 13 relative to special obligation bonds it is clear they can have no relevancy to the instant case. They are to be taken care of out of the income and revenue of the district.

It is conceded that the property sought to be taxed is what is called ''distributable'' property, the authority of ''original assessment'' of which is vested in the State Tax Commission by Sec. 9854, R. S. 1929, Mo. Stat. Ann., p. 7930. (Unless otherwise noted statutory references will be to R. S. 1929, and corresponding sections in Mo. Stat. Ann.) Said Sec. 9854 provides that the Tax Commission shall have power and authority ''subject to the right of the state board of equalization, finally to adjust and equalize the values of real and personal property among the several counties of the State as follows: . . .'' [Note, prior to the adoption of the State Tax Commission law the authority of ''original assessment'' of property such as that here in question devolved upon the State Board of Equalization.]

By subparagraph 6 of said Sec. 9854 the Tax Commission is given "exclusive power of original assessment of railroads . . . and other similar public utility corporations (of which defendant is one) . . . now possessed and exercised by the State Board of Equalization." But it may not be amiss to state here that by subparagraph 5 of said Sec. 9854 it is provided that the Tax Commission shall furnish to the State Board of Equalization a statement of the value of the taxable property in each county, including the amount to be added to or deducted from the valuation of each county, "to the end that the State Board of Equalization may adjust and equalize the valuation of real and personal property among the several counties in the state as is provided by law."

Section 10066, as amended by Laws of Mo. 1933, p. 422, provides that property such as that here involved "shall be subject to taxation for State, county, municipal and other local purposes to the same extent as the property of private persons. And taxes levied thereon shall be levied and collected in the manner as is now or may hereafter be provided by law for the taxation of railroad property in this State, and county courts, and the county and State Boards of Equalization are hereby required to perform the same duties and are given the same powers in assessing, equalizing and adjusting the taxes on the property set forth in this section as the said courts and boards of equalization have or may hereafter be empowered with in assessing, equalizing, and adjusting the taxes on railroad property; . . ." The president or other chief officer of the corporation is required to furnish a statement as in case of a railroad company.

The statutes relating to the assessment and taxation of railroad property are Sections 10011 to 10051. Section 10012 requires the chief officer of the corporation to furnish to the State Auditor a statement of the total length of the road's mileage in the State (including what we here term "distributable property,") and the mileage and amount of such property "in each county, *municipal township*, incorporated city, town or village through or in which it is located in this State . . ." (Italics ours.) By Sec. 10016 the State Auditor is required to lay before the "state board of assessment and equalization" all returns so made to him.

Section 10017 provides for the membership (elective State officers) and organization of the State Board of Equalization and that it shall meet at stated times "for the purpose of assessing, adjusting and equalizing the valuation of such railroad property." Conceding that by Sec. 9854, supra, the power of *original* assessment is given to the Tax Commission, may not the Board of Equalization still have duties to perform in connection with the assessment? Said Sec. 10017 further provides that the Board of Equalization shall have power to summon witnesses, etc., and to increase or reduce the aggregate valuation "of any railroad company included in the statements and

returns made by the railroad companies and the clerks of the county courts, and shall assess, adjust and equalize any other property belonging to said railroad companies . . . as they may deem just and right . . ." Since the law creating the State Board of Equalization and defining its powers and duties was not repealed by the later State Tax Commission law except so far as the latter necessarily conflicted with the former ·(repeal "by implication" not being favored) may not the Legislature have intended that the Board of Equalization still has duties and functions to perform in connection with the assessment of the distributable property of public utility corporations?

Turning now to Sec. 10022, relative to the apportionment of taxes to be levied against railroad properties, and keeping in mind that by Sec. 10066, supra, defendant is governed by the same law, we find:

Said Sec. 10022 provides that the Board of Equalization shall apportion the aggregate value of property such as that here involved "to each county, *municipal township,* city or incorporated town" in which such road is located, according to the ratio which the miles of completed track in such "county, *municipal township,* city or incorporated town" bears to the whole mileage in the State. (Italics ours.) By Sec. 10023 said board is required to keep a record of its proceedings and file same in the office of the State Auditor. By Sec. 10024 the State Auditor is required upon receipt of the proceedings of the Board of Equalization, to certify to the secretaries of the respective railroad companies and to the county courts of the proper counties the action of said State Board of Equalization, the certificate to set forth the mileage of the road in the State; the valuation thereof per mile; the value of rolling stock, etc. ("distributable" property) ; the length of roadbed "in each county, city, town, village and municipal township;" the total value of roadbed and side tracks and rolling stock "as assessed and *apportioned* to such county, city, town, village and *municipal township* therein by said board." (Italics ours.)

Sections 10025 to 10027, inclusive, deal with the assessment of what is called local property, to be made by the local assessors and not here involved.

By Sec. 10028 it is provided that upon receipt from the State Auditor of the certificate of the action of the "board of assessment and equalization," the "returns of the county assessor and the certificate of cities, towns and villages made under the preceding section (10027)," the county court shall "ascertain and levy the taxes for state, county, municipal township, city, incorporated town and village and school purposes, . . . at the same rate as may be levied on other property, except that the rate for school purposes and for the erection of public buildings, and for other purposes, shall be ascertained as prescribed in the next succeeding section . . ."

Said section further provides in case the county court fails or omits to levy the taxes or has erroneously levied them for any year the court shall, as in said section specified, "ascertain and levy the taxes for state, county, municipal township, city, incorporated town or village and school purposes, and for the erection of public buildings and for other purposes, on the railroad and the property thereof, in such county, municipal township, city and incorporated town and village, which may have been . . . omitted . . . as returned by the state board of equalization . . ." Other sections of the statute provide for taxation of property such as this for school purposes. [See Sections 10029, 10030, 10031.] By Sec. 10031 it is the duty of the county clerk, when the tax book is completed, to certify to the secretary or chief managing officer in this State of a railroad company a statement of the taxes levied on the property of the railroad company containing, first, total valuation of roadbed and rolling stock as "equalized and apportioned to such county" and the amount of "state, county, city, town or village, municipal township and school taxes and taxes for the erection of public buildings, and for other purposes, levied thereon; . . ."—(second, local taxes, not here involved).

We think it clear from the wording and provisions of said Sections 10029 to 10031, inclusive, that the words "and for other purposes," used in connection with the authority to tax for the erection of public buildings, etc., have reference only to taxation for school purposes. It is to be noted that in these sections the language "*municipal townships*" is still used. And see in this connection, Sec. 10036, defining "and for other purposes:"—

"Whenever and wherever the words 'and for other purposes' occur in this article, they shall be held to mean taxes or taxation for other purposes, and shall be construed to include all taxes, estimates for which shall have been made or the levy of which shall have been lawfully directed by any school meeting, school officer or school board, other than taxes for school purposes, and taxes for the erection of public buildings herein provided for."

It appears to us the specific inclusion of and reference to school taxes in defining "other purposes" in said Sec. 10036 evidences a legislative intent to make that definition applicable only to taxes ordered or authorized by school districts.

It is conceded that under our system of taxation there can be no lawful collection of a tax until there is a lawful assessment and there can be no lawful assessment except in the manner prescribed by law and of property designated by law for that purpose. [See State ex rel. Union Electric Light & Power Co. v. Baker et al., 316 Mo. 853, 293 S. W. 399 (cited by both sides).] This principle is well settled and needs no further citation of authorities. Appellant argues that under present law the functions of the Board of Equali-

zation are purely ministerial or clerical and constitute no part of the process of assessment, citing State ex rel. v. Baker, supra. In that case, 316 Mo. 853, 293 S. W. l. c. 404, the court said,—"The apportionment here contemplated (by the Board of Equalization) was not in the nature of a power conferred upon the board of equalization, but rather a ministerial or clerical duty required of that body before the record of its proceedings should be filed with the state auditor." But the court added *"It seemingly marked the completion of the assessment.* [3 Cooley on Taxation (4 Ed.), sec. 1171.] It is still incumbent on that body to perform that duty, notwithstanding the power of original assessment has been transferred to the Tax Commission, and, being a necessary clerical duty in the application of a rule of assessment, its performance is implied in the express provisions of Section 13056 (R. S. 1919) as amended." (Italics ours.)

After careful reading of the opinion in the Baker case we do not think the court meant there to hold that the functions of the Board of Equalization are now *purely clerical* and that it performs no functions in the process of assessment. If so, what becomes of the numerous statutory provisions requiring that board to equalize and adjust the valuation of property among the several counties, etc.? Certainly the Board of Equalization is more than a mere clerk.

We are dealing with the assessment and collection of taxes. We have said there can be no levy and collection of taxes without a lawful assessment. What, then, is an assessment? In State ex rel. Asotsky v. Regan, 317 Mo. 1216, 298 S. W. 747, 749, this court, en banc, said, quoting approvingly from C. J.:

" 'As the word is more commonly employed, an assessment consists of the two processes of listing the persons, property, etc., to be taxed, and of estimating the sums which are to be the guide in an apportionment of the tax between them; the designation of the person or things which shall be the subject of taxation and the apportionment of taxation among such persons or things in the ratio prescribed by law; the procedure on the part of the officials by which property is listed, valued, and finally the *pro rata* declared; not merely the valuation of the property for taxation, but the whole statutory mode of imposing the tax, embracing all the proceedings for raising money by the exercise of the power of taxation from their inception to their conclusion.' [5 C. J. 816, 817.] "

Appellant stresses the provisions of some of the sections we have referred to above to the effect that all property in the water district is subject to taxation to the same extent as the property of private persons. Of course it is taxable but only as provided by law. In State ex rel. School District of K. C. v. Waddill, 330 Mo. 1118, 52 S. W. (2d) 476 (banc), the court said (52 S. W. (2d) l. c. 477):

"Is it the duty of the State Tax Commission to separately assess the portion of the service company's property which lies within the

territorial limits of relator school district? If no such duty devolves upon the commission, is it then the duty of the State Board of Equalization to allocate to the district, as a basis for levying school taxes, a portion of the assessed aggregate value of the service company's property?''

Both questions were answered in the negative. The coutr said ''the assessment and levy of taxes in this State is purely statutory.'' (Cases cited.) The assessors have no jurisdiction to assess property otherwise than as the statute prescribes. (Cases cited.) Under our system of taxation . . . there can be no lawful assessment except in the manner prescribed by law. (Cases cited.) The suit in that case was by mandamus to compel the State Tax Commission to assess the property of the Kansas City Public Service Company within the territorial limits of the relator school district and to issue its additional certificate to the County Court of Jackson County stating the assessed value of property (distributable) of said company in said school district. [The K. C. Pub. Service Co. was a streetcar company whose property was subject to taxation and apportionment in the same manner and to the same extent ''as other railroad property.'' Sec. 10019; State ex rel. v. Waddill, supra.] In that case the court was discussing particularly whether school taxes against distributable property of a public service corporation should be allocated to the school districts of a county on the basis of the average school enumeration of such districts in the country. After discussing various applicable statutory provisions the court said, 52 S. W. (2d) l. c. 479:

''Stated more concisely, the method prescribed by statute for the assessment and taxation of the distributable property of a railroad company is this: The State Tax Commission shall assess the aggregate valuation of such property, regardless of its location in this State. The State Board of Equalization shall then equalize such aggregate valuation and apportion it, on a mileage basis, to the counties, municipal townships, cities, and towns in which the property or some part of it is located, and certify the result of its action to the county courts of the proper counties. On the aggregate value apportioned to a county, the county court of such county shall levy taxes for county purposes at the same rate levied on other property in the county for such purposes; on the apportionments made to municipal townships, cities, and towns, respectively, it shall levy taxes at the same rates levied on other property within the territorial boundaries of those subdivisions and agencies for their respective purposes; and on the apportionment made to the county it shall make a further levy of taxes for school purposes—at the average rate as heretofore defined.''

The court referred to and overruled State ex rel. Gottlieb v. Met. St. Ry. Co., 161 Mo. 188, 61 S. W. 603 (holding differently as to the

assessment and apportionment of street railroads for school districts), and said:

"The construction put upon said Section 10019 by the Gottlieb case will not bear analysis. It is made to turn upon general language found in the beginning of the section, namely: 'The said property (of a street railroad company) . . . shall be subject to taxation for state, county, municipal and other purposes to the same extent as the real and personal property of private persons.' This provision as a matter of fact serves no purpose. The property of street railroad companies, though devoted to a public use, is notwithstanding private property. Under the Constitution it is not in any respect exempt from taxation; it must be taxed just like all other private property; that is, in proportion to its value. But, whatever the purpose intended, this general language cannot under any rule of construction be regarded as limiting or modifying the specific provision immediately following it. The former merely provides that property of street railroad companies shall be subject to taxation to the same extent as other property; the latter points out the particular manner in which the property shall be assessed and taxed."

■ From the foregoing it appears the county court is not authorized to levy taxes upon the distributable property of railroads until the valuation thereof, as equalized and adjusted by the State Board of Equalization, has been certified to it, and may then levy for municipal townships, cities and other local subdivisions only as by the statutes provided. ■ This brings us to consideration of an insistence strongly urged by appellant, viz., that the water district should be regarded as a "municipal township" within the meaning of these taxing statutes. It, of course, is not a county nor an incorporated city, town or village. It is denominated a "political corporation" by the Act under which it was organized. It might be termed a "municipal corporation" in the board sense sometimes attributed to that term. See State ex rel. Kinder v. Little River Drainage District, 291 Mo. 267, 236 S. W. 848, wherein it was held that a drainage district was a "municipal corporation" within the meaning of Sec. 6, Art. X of the State Constitution, exempting from taxation the property of "the state, counties and other municipal corporations." In the broad sense defined (and cogently reasoned) in the Kinder case, supra, defendant might be said to be a municipal *corporation*. But does that mean that it is a *municipal township* as that term is used in the taxing statutes? A municipal township may be, for some purposes and in a broad sense, a "municipal corporation"— (we suggest this thought without deciding the question)—but, even if so, is a "municipal corporation" necessarily a "municipal township?" ■ It is to be borne in mind that taxing statutes are construed strictly in favor of the taxpayer, bearing in mind that they should be applied with due regard to the apparent intention of the Legislature

as expressed in the statute, with a view to promoting the apparent object of the legislative enactment. It will be noted that in all of the taxing provisions we have noted the words "municipal townships" have been used. Nowhere are the words "municipal *corporations*" used. Appellant says "municipal township" is not defined by our statutes. We think its meaning, as used in the statutes we have quoted, is well understood and is clearly enough indicated as a subdivision of a county. Illustrative, we refer to Chap. 86, R. S. 1929, Mo. Stat. Ann., p. 8119 et seq., relating to "Township Organization." Sec. 12251, the first section of that chapter, provides for the holding of an election in any county for or against township organization. Subsequent sections provide for the organization, government and powers of the townships if township organization is voted. By Sec. 12259 provision is made for "the county court of each county" to alter the boundaries of townships and to increase or diminish their number, in the manner there provided. From these and other references in the statutes that might be made we think it too clear to admit of argument that when the Legislature used the term "municipal townships" in the statutes above referred to it meant subdivisions of a county as that term is generally understood.

It is suggested by appellant that when Sec. 10022, providing the method of taxing railroad properties, was first enacted such "public corporations" as defendant water district did not exist and could not be specifically referred to, and, if we understand his argument, that the meaning of "municipal township" should be extended or enlarged so as now to include such public corporations, since created. The term "municipal townships" has been retained in the statutes. We must assume that it was purposely retained and intended to mean what it clearly does mean.

It is our conclusion that there was no lawful authority for the levy of the tax sought to be collected and that the judgment of the trial court should be affirmed. It is so ordered. *Westhues, C.,* concurs; *Bohling, C.,* absent.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur.