86 U.S. 526
 22 L.Ed. 160
 19 Wall. 526
 HEAD
v.
THE UNIVERSITY.
 October Term, 1873
 
 ERROR to the Supreme Court of Missouri.
 Head, late professor of mathematics and also librarian in the University of Missouri, brought suit against the said university to recover salary, alleged by him to be due to him. The case was thus:
 In 1820 the United States made a grant of land for the purpose of enabling the State of Missouri to establish and support an institution of learning. The title to the grant was vested in the legislature of the State to be by it applied solely to the use of a seminary of learning. The legislature complied with the conditions of the act of Congress making the donation and established the University of the State of Missouri.
 The university was supported from the interest on its endowment fund, and from the tuition fees of its patrons, and from appropriations of the State legislature. The citizens of Boone County, and a college there previously established, made a contribution of money and property, to induce the legislature to fix the university in Boone County, and it was fixed there accordingly. None of its funds were derived from private citizens or other corporations as stockholders. There were no dividends made. The management of its funds was intrusted to the board of curators, or directly controlled by the legislature. The State owned the entire university, and had always exercised the absolute control over it ever since its incorporation. The legislature elected the board of curators, and increased or diminished the number at will. Thus, by an act of March 3d, 1845, the number was twenty, which was changed by an act of the 10th of March, 1849, to eighteen. By an act of 1845, the governor, the secretary of state, the auditor of public accounts, the State treasurer, and the president of the university were made curators by virtue of their respective officers. By an act of 1849, that portion of the law of 1845 was so changed as to make the entire board elective by the State legislature. By an act of the 4th of December, 1855, the entire board of curators was removed and a new one elected, and the length of time they should serve fixed. The chairs of the president and of all the professors and tutors were vacated by the act from the 4th of July, 1856; and the act directed elections to be held in order to fill the offices thus made vacant, and empowered the curators to fix the term of the president and professors, not to exceed six years for any one term, with authority to remove any one of them from office 'for incompetency, wilful neglect, or refusal to discharge the duties of his office, and for no other cause.'But no such removal was to be made until the accused should 'have had ten days' written notice of the proposed cause of removal, and reasonable time to answer the same, before the board, by the introduction of testimony or otherwise.'
 In this state of things, on the 10th of July, 1856, by resolution of the board of curators, certain professorships were established. Mr. W. W. Hudson was elected president, and Mr. Bolivar Head elected professor of mathematics and librarian in the said university, other professors being elected at the same time. The salaries of the president and different newly elected professors were fixed by resolution, and these further resolutions passed:
 'Resolved, That the secretary be required to inform Messrs. Hudson, Head (and others), of their election to office, and request their acceptance.
 'Resolved, That the president and professors just elected shall hold office for six years, from 5th July, 1856, subject to law.'
 On the same 10th day of July, 1856, the secretary of the board of curators informed Mr. Head in writing of his election to the professorship of mathematics, at the salary and for the term of six years, abovementioned, and requested his acceptance. On the same day Mr. Head replied to the secretary, and in writing accepted the appointment tendered. He entered immediately after upon the discharge of his duties, and continued to perform the same from that time to July 5th, 1860.
 In this further state of things the legislature of 1859 passed, on the 17th of December, another act vacating, from the 4th day of July, 1860, the offices of all the professors, tutors, and teachers connected in any manner with the university, and providing also that a new board of curators should be elected in the place of the existing board, and that elections should be had to fill the offices by the act made vacant.
 This new board being elected, notice was sent to Mr. Head from them that his office having been vacated by the legislature it became their duty to fill the same, and that they would accordingly do so at a meeting which they would hold on 15th May, 1860. At their meeting, the curators accordingly elected a professor of mathematics in place of Mr. Head, for four years from July 5th, 1860, and on the 2d of October, 1860, publicly installed the new professor in place of Mr. Head, and delivered to him possession of the rooms and apparatus belonging to said professorship. On 2d October, 1860, they appointed another person librarian, and gave him possession of the library.
 Head hereupon brought this suit in one of the Circuit Courts of the State of Missouri; alleging that his amotion from his offices without any trial or hearing, as provided in the act of 1855, was illegal in form and spirit as well as tyrannical and oppressive in fact; and claiming salary for both the offices to which he had been elected from the time when he was displaced to the end of the six years for which he had been elected. That court held that the university was a public corporation, and therefore subject to the unrestrained control of the State legislature; that the resolution of the curators, of 10th July, 1856, that the president and professors then elected should hold their offices 'for six years from the 5th of July, 1856, subject to law,' meant subject to whatever law the State legislature might think fit to pass, as there was no body that could enact laws except the legislature of the State; that the relation between the university and the plaintiff did not result from any contract between the parties, but from the law establishing the university, creating the professorships and providing for the manner of filling them.
 Judgment being given accordingly, against the plaintiff, and that judgment being affirmed in the Supreme Court of the State, he brought the case here.
 Mr. Head, propria persona, iterating the argument below, made the following points: That although the university may be a public corporation, the professors therein are not public officers; that they are mere servants for hire, with whom contracts for service may be made, and which are binding upon the corporation; that they have a vested right and legal property in their salaries and offices, of which they can be divested only by legal proceedings; that a contract for such service, at a fixed salary, and for a stipulated period, is as much within the purview of the constitutional provision which prohibits the violation of contracts by the passage of a law, as if made between individuals, subject to the legislative power to abolish the office.
 No opposing counsel.
 Mr. Justice HUNT delivered the opinion of the court.
 
 
 1
 We are of the opinion that the questions raised by the plaintiff in error are not presented by the facts of the case before us.
 
 
 2
 The plaintiff was elected a professor of mathematics in the University of Missouri, and it was resolved that he should hold his office for six years from July 5th, 1856, 'subject to law.' The judge at the circuit held, and we think correctly, that this expression meant subject to whatever law the State legislature might think fit to pass.
 
 
 3
 On the 17th of December, 1859, the legislature did pass an act, vacating the offices of all 'the professors, tutors, and teachers connected in any manner with the university,' and providing also that a new board of curators should be elected in the place of the existing board. It was by the authority of this statute that the board of curators elected a successor to the plaintiff, and placed him in the possession of the professorship. The plaintiff accepted his office subject to the laws then in existence, and subject to the passage of such subsequent laws as should seem wise to the legislature. If it had not been intended to place the control of his office at the disposition of the legislature, the words 'subject to law' would have been quite unnecessary in the resolution. That he and his office and contract were subject to the laws in existence at the time of making it, was sufficiently evident without any declaration on the point. All persons and all contracts are in that condition. But that he would be subject to future legislative action, to the extent of an immediate removal and without cause, was not so evident. It was to make that point clear, and for no other possible purpose, that his employment for six years from July 5th, 1856, was declared to be 'subject to law.'
 
 
 4
 If further evidence to this effect is needed, it is found in the manner in which the plaintiff received his appointment in 1856. It was by virtue of a statute of 1855, which declared that the offices of the president, professors, and tutors of the university should be vacant on the 4th day of July, 1856, and enacted that elections should be held to fill the offices thus made vacant. The legislature, by its own unquestioned authority, made a vacancy in the office of professor of mathematics. The vacancy thus created by law was filled by the election of the plaintiff. When it was, at the same time, declared, that this position should be held by him for six years, 'subject to law,' it cannot be doubted that he understood it to be a part of the contract that the legislature could, at their discretion and in their pleasure, bring it to an earlier end.
 
 
 5
 Without discussing other questions, for the reasons thus given, the judgment must be
 
 
 6
 AFFIRMED.
 
 
 7
 Dissenting, Mr. Justice BRADLEY.