No. 52,505

CITY OF JETMORE, KANSAS, *Appellant,* v. JOAN FINNEY, AS TREASURER OF THE STATE OF KANSAS, and PATRICK J. HURLEY, AS SECRETARY OF ADMINISTRATION OF THE STATE OF KANSAS, *Appellees.*

(631 P.2d 236)

Opinion filed July 17, 1981.

*B. A. Lightfoot,* of Jetmore, argued the cause and was on the brief for the appellant.

*Dan Biles,* assistant attorney general, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief of appellee Joan Finney as treasurer.

*Adele F. Ross,* staff attorney, argued the cause, and *Patrick J. Hurley,* secretary of Administration, was with her on the brief for appellee Patrick J. Hurley as secretary of administration.

The opinion of the court was delivered by

MILLER, J.: The petitioner, the City of Jetmore, appeals from a judgment entered in Shawnee District Court denying the City relief in the nature of mandamus and quo warranto against the respondents, Joan Finney, state treasurer, and Patrick J. Hurley, secretary of administration. We will first state the facts and then discuss the several points of claimed error.

The Congress of the United States enacted legislation in 1951 which permitted participation by state and local governmental units in the social security system. The Kansas legislature in 1951 enacted Laws of Kansas, 1951, Chapter 464, now K.S.A. 40-2301 *et seq.,* which enabled local subdivisions, including cities, to participate, and thus bring their employees into the system. The act authorized cities to submit to the State, for approval, plans extending coverage to city employees. The City of Jetmore submitted such a plan in 1951, and the plan was approved.

Section 2(*b*) of Chapter 464 defined "employment" as "any service performed by an employee in the employ of the state, or any political subdivision thereof, for such employer, except . . . (6) service in part-time positions . . . ." The City, acting under that definition, excluded the city attorney and the city treasurer from coverage under the Jetmore plan. The legislature amended the definitions section of the act in 1955, and deleted the exception of "service in part-time positions" from the definition of "employment," thus removing the basis for the exclusion. L. 1955, ch. 246, § 2. Respondents contend that the City was notified of this change by letter; the City denies receiving that notice. At any rate, the City continued to exclude its attorney and treasurer from participation, and it withheld nothing from their regular salaries and it paid nothing over to the State for either employee.

The municipal accounting section of the department of administration determined, during a field audit of the City's accounts in 1976, that the City was not withholding contributions from the salaries paid its attorney and treasurer, and the City had not paid the required contributions to the State. The department of administration made demand upon the City for the delinquent funds; the City refused payment. The secretary of administration then requested that the state treasurer withhold an equivalent sum from Jetmore's share of the special city and county gas tax distribution. Section 5 of Chapter 464, now K.S.A. 1980 Supp. 40-2305, provides in subsection (*c*) (1) that each political subdivision with an approved plan shall pay contributions to the State. Subsection (*d*) provides:

"(*d*) Delinquent payments due under paragraph (1) of subsection (*c*) of this section may, with interest at the rate of six percentum per annum, be recovered by the state agency by action in a court of competent jurisdiction against the political subdivision liable therefor *or may, at the request of the state agency, be deducted from any other moneys payable to such subdivision by any department or agency of the state.*" (Emphasis added.)

Pursuant to the request of the secretary of administration, the state treasurer withheld the funds, amounting to about $2300, from the City's share of the gas tax. The City objected, and filed this action challenging the acts of the secretary and the treasurer.

The City first argues that the withholding was unlawful because its 1951 plan had not been modified or changed. This argument overlooks the statement in the plan that it includes

coverage of all services performed by its employees "except as specifically excluded by law . . . ." That language indicates that the parties agreed to be bound by the exclusions provided by law. Many years ago, the United States Supreme Court in *Head v. University of Missouri*, 86 U.S. (19 Wall.) 526, 22 L.Ed. 160 (1873), construed the phrase "subject to law" in an employment contract to mean subject to whatever law the state legislature might think to pass. The court stated that a contract is subject to the law existing at the time of its formation without any declaration to that effect; thus, any clear declaration of such intent means that the contract terms are subject to future changes in the law as well. The act here under consideration made it possible for the municipalities to secure social security coverage—previously unavailable—for their employees. The State act was, of course, subject to any changes Congress might later enact. We conclude that the parties to the plan intended it to be subject not only to the law at the time, but to future changes in the law. The 1955 amendment thus became a part of the contract, and part-time employees were no longer excluded.

The City next complains that it was not given reasonable notice and an opportunity for a hearing. It was given notice, when the secretary demanded payment; it was not given a hearing. The City's plan provides:

"(H) Failure to make payments when due.

In case the Political Subdivision fails to make, at the time or times due, the payments provided for under this plan, there shall be added as part of the amounts due, interest at the rate of six (6) per centum per annum from the date due until paid, and the Department of Civil Service may deduct such amount as is delinquent plus accrued interest, from any amounts due the Political Subdivision from the State of Kansas. Amounts so deducted shall be deemed to have been paid to the Political Subdivision."

Thus the City agreed to the deduction; the plan called for no hearing; and the statute under which the delinquent payments were withheld required no hearing. The City contends that it was entitled to a judicial or quasi-judicial determination of whether the contributions were due before the withholding was permitted. The statute, however, makes court action or direct withholding optional with the agency charged with administering the state plan (formerly the department of civil service, and now the department of administration). The secretary merely exercised an option granted by statute. The amount of the delinquency was

never seriously challenged—the City contended that *nothing* was due, not that the amount claimed was erroneously computed.

The City contends that it has been deprived of its property without due process of law, and that it is a "person" within the protection of Section 18 of the Bill of Rights of the Constitution of Kansas. We need not reach the constitutional question for the simple reason that the City voluntarily submitted a plan which provided for the exact action taken by the secretary. The secretary acted within the terms of the City's plan and the state statute, and deprived the City of nothing more than it agreed to pay.

Relief in the form of mandamus and quo warranto is discretionary. The trial court did not abuse its discretion or otherwise err in denying the relief sought. We have reviewed all of the claims and the authorities cited by the City, and find no merit in them.

The judgment is affirmed.