STATE ex rel. Jimmie L. **MILHAM**, D. O., Plaintiff,

v.

Honorable John **RICKHOFF**, Judge, Circuit Court, St. Louis County, Defendant.

No. 63299.

Supreme Court of Missouri, En Banc.

May 11, 1982.

Rehearing Denied June 8, 1982.

Richard C. Witzel, Burton H. Shostak, St. Louis, for relator.

Robert B. Hoemeke, St. Louis, for respondent.

## ORIGINAL PROCEEDING IN MANDAMUS

SEILER, Judge.

Plaintiff seeks a writ of mandamus to compel the defendant to set aside an order dismissing the Board of Curators of the University of Missouri (hereinafter Board) as defendants in an action brought by plaintiff. Because this is a proceeding for an original remedial writ, this court has jurisdiction. Mo.Const. art. V, § 4.

Plaintiff brought suit against the Board and six individuals alleging he was libeled by a television program broadcast over station KOMU, Columbia, Missouri. KOMU is owned and operated by the University of Missouri. One of the individual defendants, Eric Bartholomew, is a resident of St. Louis County. Suit was brought in the circuit court of that county, under § 508.010(2), RSMo 1978[1], which provides that "[w]hen there are several defendants, and they reside in different counties, the suit may be brought in any such county" and which has been held in a number of decisions to apply when one or more corporations are sued with one or more individuals. *State ex rel. Allen v. Barker*, 581 S.W.2d 818, 824 (Mo. banc 1979). The Board moved to dismiss, however, contending that venue was improper because it is a "municipal corporation" subject to the special venue rules of § 508.050, which provides in part:

> Suits against municipal corporations *as defendant or codefendant* shall be commenced only in the county in which the municipal corporation is situated .... (Emphasis added.)

The Board argued that as a municipal corporation it is subject to suit only in Boone County. Defendant judge sustained this motion.[2] The mandamus proceedings followed. Our conclusion is that our alternative writ should be made peremptory.

The sole issue presented is whether the Board of Curators of the University of Missouri is a municipal corporation as used in § 508.050, and thus subject to suit, either as a defendant or as a codefendant, only when the action is instituted in Boone County. At the outset, we note that the legislature did not limit suit against the Board to Boone County.

> The University is hereby incorporated and created a body politic and shall be known by the name of "The Curators of the University of Missouri", and by that name shall have perpetual succession, *power to sue and be sued, complain and defend in all courts* .... Section 172.020 (emphasis added).

---

1. All statutory references are to RSMo 1978 unless indicated otherwise.

2. The Board also alleged that defendant Eric Bartholomew had been joined only to provide venue in St. Louis County. The same ground was urged by the individual defendants, but their motions to dismiss for improper venue were overruled. Plaintiff is a resident of Camden County and the alleged tort occurred in Boone County.

Missouri courts have defined the term "municipal corporation or municipality" in contexts other than the venue statute, § 508.050. It is a phrase that "may vary in meaning depending on the time, place and circumstance under which it is used." *City of Olivette v. Graeler*, 338 S.W.2d 827, 835 (Mo.1960). In *Marshall v. Kansas City*, 355 S.W.2d 877, 883 (Mo. banc 1962), this court stated "[a] municipal corporation has been referred to as a miniature state within its locality and as an instrumentality of the state established for the convenient administration of local government." In *State ex rel. Caldwell v. Little River Drainage District*, 291 Mo. 72, 236 S.W. 15 (1921), the question was whether property owned by a drainage district was entitled to the municipal corporation exemption from taxation. The court, holding that the district was a municipal corporation, stated that "[i]n its strict and primary sense the term 'municipal corporation' applies only to incorporated cities, towns, and villages having subordinate and local powers of legislation." But, the court expanded the scope of the definition by going on to say, "the term is applied to any *public local corporation*, exercising some function of government, and hence includes counties, school districts, townships under township organization, special road districts and drainage districts." 236 S.W. at 16 (emphasis added). In *Laret Investment Co. v. Dickmann*, 345 Mo. 449, 134 S.W.2d 65 (banc 1939), the court found that a housing authority was exempt from taxation because it was a municipal corporation. However, this court in *Beiser v. Parkway School District*, 589 S.W.2d 277 (Mo. banc 1979) defined "municipality" narrowly and held that a school district is not a "municipality" for purposes of § 71.185 which establishes a limited exception to sovereign immunity.

■ Although these cases do not define "municipal corporation" in the context of venue, they do give guidance on what factors would make a public corporation a municipal corporation. The common factor is that the municipal corporation has a local nature. Section 508.050 recognizes and protects the local interest of a municipal corporation by requiring that all suits against the municipal corporation be brought "in the county in which the municipal corporation is situated." This avoids the necessity of local government officials defending suits in courts across the state.

The Board of Curators is "a public corporation for educational purposes" and an "agency or arm of the State." *Todd v. Curators of the University of Missouri*, 347 Mo. 460, 465, 147 S.W.2d 1063, 1064 (1941).

The university is clearly a public institution, and not a private corporation.... The State established an institution of its own, and provided for its control and government, through its own agents and appointees. The act creating the institution, in its first section, declares that a "university is hereby instituted in this State, the government whereof shall be vested in a board of curators." The university is then declared a "corporation and body politic" and invested with certain powers ... By establishing the university the State created an agency of its own, through which it proposed to accomplish certain educational objects. In fine, it created a public corporation for educational purposes—a State university.

*Head v. Curators of the University of Missouri*, 47 Mo. 220, 224–25 (1871), aff'd, 86 U.S. (19 Wall.) 526, 22 L.Ed. 160 (1873). A state university is "an instrumentality of the state performing an essential governmental function for the benefit of all the people of the state, ..." *Rutgers v. Piluso*, 60 N.J. 142, 286 A.2d 697, 703 (1972). Decisions in other jurisdictions have described the corporate nature of state universities similarly. *E.g., City of Fargo v. State*, 260 N.W.2d 333, 340 (N.D.1977); *McConnell v. City of Columbus*, 172 Ohio St. 95, 97, 173 N.E.2d 760, 763 (1961).

■ The interests of the Board of Curators and the University are distinctly different from those of such public corporations

as cities, sewer districts, or local school boards. The primary difference is the statewide character and interest of the University as contrasted with the local focus of the other organizations. To illustrate this statewide character, we point to the fact that the members of the Board of Curators are appointed by the governor with the advice and consent of the senate, Mo.Const. art. IX, § 9(a); the general assembly must maintain the university, Mo.Const. art. IX, § 9(b); there are four campuses of the university (Columbia, Rolla, St. Louis, and Kansas City); the Board of Curators is to report annually to the legislature and to the governor, §§ 172.210, .220; agricultural research centers are to be established in southeast and southwest Missouri, §§ 172.493, .495; the professor of animal husbandry is to educate farmers "throughout the state," § 172.490; the university is to establish and maintain an extension service throughout the state, §§ 262.550–.620. Because of these statewide interests and activities, it is not unreasonable or illogical to require the Board to defend suits outside Boone County if venue is otherwise proper under § 508.010. The considerations underlying § 508.050 as discussed above do not apply to the Board of Curators whose University operates throughout the state.

For the foregoing reasons, we hold that the Board of Curators is not a municipal corporation within the meaning of § 508.-050. It is a public corporation and is subject to the general venue statute, § 508.010. Because venue is proper under § 508.010 in St. Louis County as that is the residence of one of the defendants, the Board of Curators must be reinstated as defendant in the underlying cause. Accordingly, our alternative writ of mandamus is made peremptory.

RENDLEN, HIGGINS and BARDGETT, JJ., concur.

WELLIVER, J., dissents in separate dissenting opinion filed.

DONNELLY, C. J., and MORGAN, J., dissent and concur in separate dissenting opinion of WELLIVER, J.

WELLIVER, Judge, dissenting.

I respectfully dissent.

The principal opinion fails to persuade me that the University of Missouri is not a "municipal corporation" within the meaning of § 508.050, RSMo 1978.[1] Our cases demonstrate that this Court has consistently adopted a broad definition of "municipal corporation." Although we have recognized that the term "may vary in meaning depending on the time, place and circumstances under which it is used," *City of Olivette v. Graeler*, 338 S.W.2d 827, 835 (Mo.1960), we have construed the term expansively. In *Laret Investment Co. v. Dickmann*, 345 Mo. 449, 134 S.W.2d 65 (banc 1939), this Court noted that

> [t]he term "municipal corporation" is sometimes used in a strict sense to designate a corporation possessing some specified power of local government. In a broader sense it includes public, or quasi public, corporations designed for the performance of an essential public service. . . .
>
> *This court has adopted the broader definition.*

*Id.* at 454, 134 S.W.2d at 68 (emphasis added). Among the things this Court has said are "municipal corporations" are cities,[2] townships under township organization,[3] counties,[4] housing authorities,[5] metropolitan sewer districts,[6] power and light compa-

---

1. Section 508.050 provides in relevant part that suits against municipal corporations "shall be commenced only in the county in which the municipal corporation is situated."

2. *St. Louis Housing Auth. v. City of St. Louis*, 361 Mo. 1170, 239 S.W.2d 289 (banc 1951).

3. *State ex rel. Caldwell v. Little River Drainage Dist.*, 291 Mo. 72, 79, 236 S.W. 15, 16 (1921).

4. *See City of Olivette v. Graeler*, 338 S.W.2d 827 (Mo.1960).

5. *St. Louis Housing Auth. v. City of St. Louis*, 361 Mo. 1170, 239 S.W.2d 289 (banc 1951).

6. *Page v. Metropolitan St. Louis Sewer Dist.*, 377 S.W.2d 348 (Mo.1964).

nies,[7] county health departments,[8] hospitals,[9] school districts,[10] drainage districts,[11] special road districts,[12] and fire protection districts.[13]

The principal opinion argues that "the municipal corporation has a local nature." That argument fails for two reasons. First, it ignores the precedents established in the previous decisions of this Court. Entities such as hospitals and power and light companies, for example, which we have said are "municipal corporations," are not necessarily of purely local character. They can, and do, serve vast areas, especially in rural areas that are more sparsely populated. Second, even if "the municipal corporation has a local nature," the principal opinion ignores the fact that the University is, in a sense, localized. The University's clientele, its students, may be drawn from all parts of the state, or even from outside the state, but that fact alone is not controlling on the issue here involved. The University's primary activity—education—is carried on in a centralized location, whether it be the Columbia campus involved in this case or the Kansas City, St. Louis, or Rolla campus.[14]

The principal opinion confuses the definitions of "municipal corporation" and "municipality" and relies in part upon the latter, which is narrower, in order to retreat from established doctrine. The opinion relies on *Beiser v. Parkway School District,* 589 S.W.2d 277 (Mo. banc 1979), which held that a school district is not a "municipality" for purposes of sovereign immunity. There is no contention in this case, however, that the University is a "municipality." Both *Beiser,* 589 S.W.2d at 280, and *State ex rel. Halferty v. Kansas City Power & Light Co.,* 346 Mo. 1069, 1080–81, 145 S.W.2d 116, 122

(1940), establish that not all municipal corporations are municipalities or municipal townships.

Municipal corporations are public, rather than private, corporations, *City of Springfield v. Clouse,* 356 Mo. 1239, 1252, 206 S.W.2d 539, 546 (banc 1947), and this Court has long recognized that the University of Missouri is a public corporation. In *Harris v. William R. Compton Bond & Mortgage Co.,* 244 Mo. 644, 149 S.W. 603 (1912), the Court, upholding the authority of the legislature to create special road districts as "public or municipal corporations," said that

the Legislature has from time to time created with varying powers the following, among other, public corporations, viz.: *the State University*; the various normal schools located in different sections of the State; the various eleemosynary institutions, such as the hospitals for the insane and weak-minded; the schools for the blind and deaf and dumb; drainage and levee districts; [and] public road districts ....

*Id.* at 691, 149 S.W. at 610 (emphasis added). *See also Todd v. Curators of the University of Missouri,* 347 Mo. 460, 465, 147 S.W.2d 1063, 1064 (1941). In *Head v. Curators of the University of Missouri,* 47 Mo. 220 (1871), aff'd, 86 U.S. (19 Wall.) 526, 22 L.Ed. 160 (1873), this Court stated:

The university is clearly a public institution, and not a private corporation....

... The state established an institution of its own, and provided for its control and government, through its own agents and appointees. The act creating the institution ... declares that a "university is hereby instituted in this State, the

7. *State ex rel. Halferty v. Kansas City Power & Light Co.,* 346 Mo. 1069, 145 S.W.2d 116 (1940).

8. *City of Olivette v. Graeler,* 338 S.W.2d 827, 835 (Mo.1960).

9. *Id.*

10. *State ex rel. Caldwell v. Little River Drainage Dist.,* 291 Mo. 72, 73, 79, 236 S.W. 15, 16 (1921).

11. *Id.*

12. *Harris v. William R. Compton Bond & Mortgage Co.,* 244 Mo. 644, 149 S.W. 603 (1912).

13. *City of Olivette v. Graeler,* 338 S.W.2d 827, 835 (Mo.1960).

14. This case might well be different had the conduct complained of occurred at the St. Louis, rather than the Columbia, campus. That issue, however, need not be resolved.

government whereof shall be vested in a board of curators." The university is then ... declared a "corporation and body politic" and invested with certain powers.... By establishing the university the State created an agency of its own, through which it proposed to accomplish certain educational objects. In fine, it created a public corporation for educational purposes—a State university.

*Id.* at 224–25.

The University of Missouri fits squarely within the definition of a municipal corporation. Municipal corporations are (1) public corporations (2) designed for the performance of an essential public service. *Laret Investment Co. v. Dickmann,* 345 Mo. at 454, 134 S.W.2d at 68. The cases have long recognized that the University is a public corporation providing education as a public service.

By analogy, the University is much like any other governmental institution. It carries on activities that touch the lives of all Missouri residents. Services are provided throughout the state. Other state agencies provide services throughout the state, utilizing branch offices in virtually every county of the state. Generally, venue in actions against them lies only in the county in which their principal offices are located and their principal official duties are performed—e.g., Cole County—unless otherwise provided by statute. *State ex rel. Dalton v. Oldham,* 336 S.W.2d 519, 523 (Mo. banc 1960). *See also State ex rel. State Board of Registration for the Healing Arts v. Elliott,* 387 S.W.2d 489, 492–93 (Mo. banc 1965).

The University of Missouri was created and established by the General Assembly in 1839. Laws of Mo. 175 (1838–39). It is the oldest state university west of the Mississippi River. Its early history is described in the state's Official Manual:

> The manner in which it was established not only was dramatic, but also demonstrates the strong desire of early day Missourians for higher education.
>
> Missouri was just emerging from frontier settlement days when the General Assembly announced that the state university would be located in the communi-

ty offering the greatest financial support. These fund and proceeds from the sale of federal lands [for land grant colleges] led to the founding of the university.

> Citizens of Boone County and the city of Columbia pledged $117,921 in cash and land to outbid five other competing counties in central Missouri.

State of Missouri, 1979–1980 Official Manual 399 (1979).

I find it extremely hard to believe that those early Missourians and members of the Tenth General Assembly contemplated that the educational dollar should be spent in defending lawsuits all over the state. In this era of the shrinking educational dollar, I find no compelling reason for this Court, under the pretext of interpretation of case law, to decree that which the legislature has not seen fit to enact. Nothing in our prior cases compels that result.

Our alternative writ should be quashed.