STATE of Missouri ex rel. the **BOARD OF REGENTS OF SOUTHWEST MISSOURI STATE UNIVERSITY, Relator,**

v.

**Honorable Donald E. BONACKER, Judge of the Circuit Court of Greene County, Division 3, Respondent.**

No. 15912.

Missouri Court of Appeals, Southern District, En Banc.

Jan. 23, 1989.

Motion for Rehearing or Transfer to Supreme Court Denied Feb. 3, 1989.

Application to Transfer Denied March 14, 1989.

Lee Chestnut, Springfield, for relator.

Glenn A. Burkart, Mann, Walter, Burkart, Weathers & Walter, Springfield, for respondent.

## ORIGINAL PROCEEDING IN PROHIBITION

CROW, Judge.

The Board of Regents of Southwest Missouri State University ("the Board") brings this original proceeding in prohibition seeking a writ barring respondent, a judge of the Circuit Court of Greene County, from taking further action in case number CV185–972–CC–3 styled "Southwest Missouri State University, Plaintiff, vs. George D. Harriman, Defendant," except entry of an order granting an application for change of judge.

The record (Rule 84.24[1]) demonstrates that on July 31, 1985, respondent entered judgment in case number CV185–972–CC–3 ("the underlying case") in favor of Southwest Missouri State University ("SMSU") and against George D. Harriman ("Harriman") in the aggregate amount of $11,159.05, to bear interest at three per cent per annum, plus costs.

Almost three years later, on May 10 and 11, 1988, SMSU caused writs of garnishment in aid of execution to be issued to American National Insurance Company ("American National") in the underlying case. The "return dates" of the writs were, respectively, August 9 and 11, 1988.

On June 21, 1988, Harriman and his wife filed a "motion to intervene" in the underlying case, which motion was granted by respondent July 7, 1988.[2]

On August 19, 1988, SMSU filed an application for change of judge in the underlying case. Ten days later respondent announced the application would be denied on September 2, 1988, unless respondent was "directed otherwise by extraordinary writ."

The Board filed its petition for writ of prohibition with us September 1, 1988; our preliminary order in prohibition (Rule 97.05) was issued to respondent the next day. Respondent, in due time, filed his answer, and briefs were subsequently filed by the Board and by respondent.[3]

The Board relies on Rule 51.05 in support of its argument that respondent lacks authority to take any further action in the underlying case other than granting SMSU's application for change of judge. Rule 51.05 provides, insofar as pertinent to the issues before us:

"(a) A change of judge shall be ordered in any civil action upon the filing of a written application therefor by any party or by his agent or attorney....

(b) The application must be filed within thirty days after the answer is due to be filed if the trial judge is designated at the time the answer is due....

....

(d) Application for change of judge may be made by one or more parties in any of the following classes: (1) plaintiffs; (2) defendants; (3) third-party plaintiffs (where a separate trial has been ordered); (4) third-party defendants; (5) intervenors. Each of the foregoing classes is limited to one change of

---

1. Rule references are to Missouri Rules of Civil Procedure (19th ed. 1988) except where otherwise indicated.

2. Why Harriman, the named defendant in the underlying case, deemed it necessary to obtain leave to intervene in the underlying case is unexplained in the record, which does not contain a copy of the motion to intervene. We assume Harriman and his wife claim an interest in the property SMSU is endeavoring to garnish, hence intervention was sought per Rule 90.15.

3. Respondent's answer and brief were filed by the attorneys representing Harriman and his wife in the underlying case.

judge and any such change granted any one or more members of a class exhausts the right of all members of the class to a change of judge, with this exception: in condemnation cases involving multiple defendants, as to which separate trials are to be held, each such separate trial to determine damages shall be treated as a separate case for purposes of change of judge.

(e) Upon the presentation of a timely application for change of judge, the judge shall promptly sustain the application...."

The Board asserts that while garnishment "is technically not the institution of a new suit," it is nonetheless "similar to an ordinary lawsuit," as the garnishor's interrogatories, the garnishee's answers thereto, and the garnishor's "denials" [4] of the answers serve "as the equivalent of the pleadings to frame the issues." The Board's position is supported by *Frohoff v. Casualty Reciprocal Exchange*, 113 S.W.2d 1026, 1028–30 (Mo.App.1938), where a judgment in favor of a garnishor (a plaintiff attempting to collect a money judgment) against a garnishee (an insurance company that had allegedly issued a policy of liability insurance to one of the judgment debtors) was held to be a final judgment reviewable by an appellate court on writ of error.

The Board emphasizes that paragraph "(e)" of Rule 51.05, quoted earlier, provides that upon presentation of a timely application for change of judge, the judge shall promptly sustain it. The Board insists its application for change of judge was timely under paragraph "(b)" of Rule 51.05, also quoted earlier, which provides that an application for change of judge must be filed within 30 days after the answer is due to be filed if the trial judge is designated at the time the answer is due. The Board points out that the only answers due in garnishment proceedings are the verified answers of the garnishee to the interrogatories of the garnishor, which answers are due within ten days after the return date of the writ of garnishment. Rule 90.13(b).

As reported earlier, the return dates of the writs of garnishment in the underlying case were August 9 and 11, 1988, respectively, and SMSU's application for change of judge was filed August 19, 1988.

Respondent contends the Missouri Rules of Civil Procedure do not provide a method for change of judge in garnishment proceedings. Respondent emphasizes that paragraph "(d)" of Rule 51.05, quoted earlier, enumerates sundry classes of litigants who may apply for change of judge, and that neither garnishors nor garnishees are listed.[5] Respondent concedes that "a garnishor may be either a successful plaintiff or a successful counterclaiming defendant in the main case," but asserts that the words "plaintiffs" and "defendants" in paragraph "(d)" of Rule 51.05 do not solve the problem of "whether a change of judge may be allowed in a subsequent garnishment proceeding."

Neither party cites, and our independent research has not found, a Missouri case deciding whether Rule 51.05 authorizes a change of judge upon application by a garnishor in a garnishment proceeding. There are, however, cases helpful by analogy.

*State ex rel. Logan v. Peters*, 723 S.W.2d 35 (Mo.App.1986), arose from an action by a prisoner under Rule 27.26 (now repealed) to vacate two robbery convictions. The circuit judge denied relief without an evidentiary hearing. On appeal the judgment was reversed for lack of specific findings of fact and conclusions on all issues, and the cause was remanded for further consideration and entry of more complete findings of fact and conclusions of law. The prisoner promptly applied for a change of judge under Rule 51.05, Missouri Rules of Civil Procedure (17th ed. 1986), which at

---

**4.** Rule 90.13(c) authorizes a garnishor to file *exceptions* to a garnishee's answers. Section 525.190, RSMo 1986, authorizes a *plaintiff* to *deny* the answer of a garnishee.

**5.** The Board's reply brief proclaims that Rule 51.05(d) "is new this year." We direct the Board to Rule 51.05, Missouri Rules of Civil Procedure (7th ed. 1976), where paragraph "(d)" of Rule 51.05 reads exactly the same as it does today.

that time provided that such applications had to be filed at least 30 days before trial or within 5 days after a trial setting was made, whichever was later. The circuit judge declared he would deny the application unless prohibited, his logic being that no new trial had been mandated. The prisoner thereupon brought a prohibition action in the Western District of this Court. The Western District held it would be impossible for the circuit judge to make findings and conclusions on certain issues without a hearing, which would amount to a "trial" within the meaning of Rule 51.05, hence the prisoner's application for change of judge was timely and the circuit judge was barred from denying it. *Id.* at 36–37. The significance of *Logan* regarding the instant prohibition proceeding is that an action under former Rule 27.26 was a civil action, Rule 27.26(a), Missouri Rules of Criminal Procedure (17th ed. 1986), and a prisoner bringing such an action was designated a "movant" or a "petitioner." Appendix, Rule 27.26, Missouri Rules of Criminal Procedure (17th ed. 1986). Neither term appears in the list of classes of litigants set forth in paragraph "(d)" of Rule 51.05. The prisoner in *Logan* was nonetheless allowed a change of judge under Rule 51.05.

*State ex rel. Horridge v. Pratt,* 563 S.W.2d 168 (Mo.App.1978), arose from an action for dissolution of marriage in which the husband—the petitioner—appealed from the trial court's decree. The appellate court reversed the decree and remanded the cause for a new trial on the issue of maintenance for the wife. The husband filed a timely application for change of judge under Rule 51.05, and thereafter brought a prohibition action in the Western District of this Court to bar the judge from whom the change was sought from proceeding further in the case. The Western District held that as the remand was for a new trial on the question of maintenance, the husband's application for change of change should have been granted. At the time *Horridge* was decided, parties in marriage dissolution actions were characterized as "petitioner" and "respondent," § 452.320.2(1), RSMo Cum.Supp.1975, just as they are today. Neither term appears in the list of classes of litigants set forth in paragraph "(d)" of Rule 51.05. The husband in *Horridge* was nonetheless entitled to a change of judge under Rule 51.05.

We are persuaded by *Logan* and *Horridge* that *if* a garnishment proceeding is a "civil action" within the meaning of that term in paragraph "(a)" of Rule 51.05, the absence of the term "garnishor" from the list of classes of litigants in paragraph "(d)" of Rule 51.05 does not bar a garnishor from obtaining a change of judge in a garnishment proceeding.

In *Crain v. Missouri Pacific Railroad,* 640 S.W.2d 533 (Mo.App.1982), law partners McCarthy and Martin were representing claimants against a railroad. The law partnership was dissolved, after which Martin and a new partner continued to represent the claimants, ultimately filing suits which were resolved by a court-approved settlement. The settlement provided for attorney fees in a stated amount. Before the settlement McCarthy had filed an attorney's lien claiming half of any attorney's fee. In order to allow the claimants and the railroad to be disengaged from the case it was agreed that the attorney fee would be paid into court, to abide resolution of the dispute between McCarthy and Martin and his new partner. The trial court ordered the lawyers to interplead. McCarthy, at that point, filed an application for change of judge per Rule 51.05(a). The trial court denied the application, explaining that the attorney fee litigation was an ancillary proceeding, being part of the principal case, and not an independent action. The trial court ultimately entered judgment awarding Martin and his new partner almost 98 per cent of the fee. McCarthy appealed, complaining, among other things, that the trial court had erred in denying the application for change of judge. The Western District of this Court agreed, holding that the attorney fee dispute was a "civil action" within the meaning of Rule 51.05(a) even though the pleadings and papers filed in that controversy continued to carry the same caption and case numbers as the cases between the claimants and the railroad and were filed in

the same file folder. *Id.* at 535[2]. The attorney fee dispute, said the opinion, was an independent action between different parties than those in the original action. New issues were raised, different relief was sought, and substantial rights were adjudicated. *Id.* at 535. The attorney fee controversy was thus an independent civil action in which either side was entitled as a matter of right upon written application to a change of judge. *Id.* The judgment was reversed and the cause was remanded. *Id.* at 537.

*State ex rel. Brault v. Kyser,* 562 S.W.2d 172 (Mo.App.1978), arose from an action by a juvenile officer to terminate parental rights. The mother of the subject children, who had earlier been granted a change of judge in a neglect proceeding involving the same children and bearing the same case number as the termination proceeding, made application for a change of judge in the termination proceeding. The trial judge denied the application. The mother then commenced a prohibition proceeding in the Western District of this Court to bar the trial judge from proceeding further in the termination proceeding. The Western District held that the termination proceeding raised a new issue and sought distinctly different relief than the neglect proceeding; consequently, the termination proceeding was a new and different civil action within the meaning of Rule 51.05 and permitted a fresh application for change of judge. *Id.* at 174[1]. The trial judge was prohibited from taking any action other than to grant the mother's request for change of judge. *Id.* at 175.

*State ex rel. Interstate Motor Freight System, Inc. v. Hall,* 409 S.W.2d 678 (Mo. banc 1966), arose from a shareholder's suit against a corporation. The trial judge appointed a receiver, who filed a "third-party petition" against another corporation (Interstate). The receiver ultimately requested a trial setting on the issues raised in the third-party petition. Interstate promptly requested a change of judge in the "third-party action," which the trial judge denied. Interstate thereupon sought prohibition in the Supreme Court of Missouri, which held that whether Interstate was entitled to a change of judge depended on whether the issues raised in the "third-party action" were normally part of the routine administration of the receivership or constituted separate triable issues which had the characteristics of a separate cause of action. *Id.* at 681. The Supreme Court concluded that the "third-party action" was instituted by the receiver against Interstate to enforce a civil remedy, was an adversary proceeding, and contemplated a determination of substantial rights. *Id.* Consequently, it was a substitute for a separate suit and constituted a "civil suit" within the meaning of Rule 51.03, the rule then in effect regarding changes of judge in civil suits. *Id.* Accordingly, Interstate was entitled to a change of judge. *Id.* at 682[7].

Applying *Crain, Brault* and *Interstate Motor Freight* to the record before us, we see that the issue raised by SMSU's petition against Harriman in the underlying case was whether Harriman was indebted to SMSU on certain promissory notes. That issue was resolved by the judgment of July 31, 1985, mentioned in the second paragraph of this opinion. The only parties to the underlying case at that time were SMSU and Harriman. The summons to garnishee American National purported to attach all personal property, money, credit, bonds, bills, notes, checks, or other choses in action of Harriman in American National's possession or charge or under its control. SMSU propounded interrogatories to American National about such items. Lawyers representing American National filed answers dated June 7, 1988, averring that another law firm (Miller & Sanford, P.C.), described as "co-counsel for Garnishee," possesses two "settlement checks" payable to Harriman and his attorneys. One check is for $17,666, issued by The Hartford; the other is for $8,834, issued by CIGNA. The checks, according to American National, are "consideration for settlement of a lawsuit by Mr. Harriman against the Garnishee, but are not paid by the Garnishee and are not under its control."

On August 19, 1988, SMSU filed a "Denial of Answer of Garnishee," alleging that

the "drafts" once in American National's custody or control had been delivered to counsel representing Harriman in the garnishment proceeding and converted to cash.

On August 29, 1988, Harriman and his wife filed a motion to strike SMSU's "Denial" of August 19, 1988, on the ground it was untimely filed. A similar motion was filed by Miller & Sanford, P.C., August 30, 1988.

It is thus evident that issues have arisen between SMSU, American National, and Harriman and his wife since entry of the judgment of July 31, 1985, which issues require adjudication. Disbursal of $26,500 hinges on the outcome.

We therefore hold that the existing dispute between SMSU, American National, and Harriman and his wife concerning the checks SMSU has attempted to garnish constitutes a "civil action" within the meaning of paragraph "(a)" of Rule 51.05. *See: Hayes v. Hayes,* 363 Mo. 583, 252 S.W.2d 323, 325–28 (1952).

In reaching that conclusion we do not overlook *Capps v. Capps,* 715 S.W.2d 547 (Mo.App.1986), where a husband appealed the granting of his wife's request for renewal of a full order of protection under the Adult Abuse Act, §§ 455.010–.085, RSMo Cum.Supp.1984. One of the husband's contentions was that the trial court erred in denying the husband's application for change of judge, as a renewal of a full order of protection is a civil action for the purpose of Rule 51.05(a). *Id.* at 551. The Eastern District of this Court disagreed, relying on *Hayes,* an appeal from a judgment modifying a custody provision of a divorce decree. According to *Capps, Hayes* held it is not important whether a proceeding is a continuation of the original action or ancillary to the original action. *Capps,* 715 S.W.2d at 551. The decisive question is whether the proceeding is the kind of independent proceeding which does in fact adjudicate rights of individuals, irrespective of and not conditioned upon what is provided in the original decree. *Id.* at 551–52. *Capps* added:

"The *Hayes* court in deciding that a motion to modify a divorce is a civil suit,

did so by examining whether the proceeding is one in which the relief sought is not that the original remedy by enforced as written, but that it be modified because of changed circumstances. *Hayes,* 252 S.W.2d 328. The *Hayes* court placed particular importance upon the necessity of the movant alleging new facts, conditions and circumstances arising or coming into existence since the rendition of the original decree. *Id.* at 328. Such allegations were highly significant in the court's decision that a motion to modify was a civil suit for purposes of a change of judge." *Capps,* 715 S.W.2d at 552.

Applying the above rationale, *Capps* noted that a renewal of a full order of protection need not be based on the allegation of any new facts; it is sufficient if the circumstances forming the basis for the initial order continue to exist and the party at risk will be placed in an immediate and present danger of abuse if the full order expires. *Id.* at 552[8]. That being so, said *Capps,* a proceeding for renewal of a full order of protection is not a civil action for purpose of change of judge under Rule 51.05. *Id.* at 552[9].

The garnishment litigation pending in the underlying case will adjudicate rights of parties irrespective of and not conditioned upon what is provided in the judgment of July 31, 1985. The dispute in the garnishment proceeding is not whether Harriman is indebted to SMSU in the amount specified in that judgment, but instead whether SMSU has effected a valid garnishment of the two checks payable to Harriman and his attorneys so that the proceeds thereof will be applied in satisfaction of the three-year-old judgment. The rights of Harriman, his attorneys, and SMSU to the proceeds of such checks are not fixed by that judgment, but remain to be determined in the garnishment proceeding. Our conclusion that the existing garnishment proceeding is a civil action within the meaning of Rule 51.05(a) is not, consequently, undermined by *Capps,* even though garnishment has been characterized as a proceeding "auxiliary to a judgment." *Nacy v. Le*

*Page,* 341 Mo. 1039, 111 S.W.2d 25, 25–26[2] (1937).

Having ruled earlier that the absence of the term "garnishor" from the list of classes of litigants in paragraph "(d)" of Rule 51.05 does not bar a garnishor from obtaining a change of judge in a garnishment proceeding, we hold that SMSU was entitled to the change of judge requested in its application of August 19, 1988, in the underlying case. In so deciding we underscore that SMSU has not heretofore received a change of judge in the underlying case, hence we are not obliged to decide what effect, if any, a change of judge at the behest of SMSU at an earlier time in the underlying case would have had on the extant application. We also note that respondent does not dispute the Board's contention that SMSU's application for change of judge was timely.

█ The conclusions we have reached would, in normal circumstances, complete our task. Respondent, however, maintains we lack "jurisdiction of the subject matter of this prohibition proceeding because at the time same was filed in this Court, [the Board] did not pay and the petition for writ of prohibition herein filed was not accompanied by the docket fee mandatorily required by Rules 84.24 and 97.01, ... for which reason said petition for writ of prohibition should not have been and was improperly accepted for filing ... in this Court."

Rule 84.24 provides:

"... The petitions for [original remedial] writs shall be accompanied by a docket fee in the amount specified by Rule 81.04(c)...."

Rule 81.04(c) provides:

"The docket fee of fifty dollars in the appellate court shall be deposited with the clerk of the trial court at the time of filing the notice of appeal...."

Rule 97.01 provides:

"Proceedings in prohibition in ... the court of appeals shall be as prescribed in Rule 84.22 to Rule 84.26, inclusive, and this Rule 97...."

Respondent concedes: "It is true, of course, that a substantial number of cases have held that normally, in the absence of statute, if a state agency unsuccessfully pursues an action, the prevailing party cannot recover costs, and it is error to tax them against the state or its agencies."

That was precisely the holding in *Murphy v. Limpp,* 347 Mo. 249, 147 S.W.2d 420 (1940). There the members of the Unemployment Compensation Commission brought an action against a businessman to collect contributions under the Unemployment Compensation Law. The businessman filed a motion to require the plaintiffs to give security for costs, which motion was sustained by the trial court. Judgment was ultimately entered in favor of the businessman and against the plaintiffs, with costs taxed against the plaintiffs. On appeal the plaintiffs contended, among other things, that the State was not liable for the costs. The Supreme Court of Missouri stated it is a general and well established rule apart from statute that costs are not recoverable from a state, in her own courts, whether she has brought suit as plaintiff or has properly been sued as defendant, or whether she is successful or defeated. *Id.* 147 S.W.2d at 423[3]. As no statute authorized assessment of costs against the State, that portion of the judgment was reversed. *Id.* at 423–24.

We find nothing in *Murphy* indicating that the plaintiffs ever gave security for costs in obedience to the trial court's order. In that respect *Murphy* is analogous to the instant proceeding where the Board paid no docket fee in this Court upon the filing of the petition for writ of prohibition. The Supreme Court of Missouri in *Murphy* nonetheless entertained the plaintiffs' appeal and reversed that segment of the trial court's judgment taxing costs against them.

In *State ex rel. School District of the City of Independence v. Jones,* 653 S.W.2d 178 (Mo. banc 1983), several school districts brought an action against the members of the State Tax Commission, the State Commissioner of Education, the State Department of Elementary and Secondary Edu-

cation, and the State Board of Education and its members. The trial court's judgment included a provision taxing costs against those defendants. On appeal by the defendants the Supreme Court of Missouri said:

"Each defendant is a state agency or official. The rule is well established that absent statutory provision court costs cannot be recovered in state courts from the State of Missouri or its agencies or officials. As no such statutory provision is cited, we find the court erred in assessing costs against defendants." *Id.* at 191[15, 16] (citation omitted).

If the $50 docket fee required by Rules 84.24 and 81.04(c) constitutes costs, and if the Board falls within the classification "State of Missouri or its agencies or officials" in *School District of the City of Independence*, it follows that the Board was not required to pay the docket fee upon the filing of its petition for writ of prohibition in this Court.

Section 483.500, RSMo 1986, provides:

"1. Clerks of the supreme court and court of appeals, in lieu of other fees, shall severally be allowed and paid by the appellant or plaintiff in error a fee of fifty dollars, which shall include all the costs in the case, including a certified copy of the opinion and mandate to the court from which the cause shall be sent, and all fee bills and executions issued in the cause; provided, that nothing herein shall be construed to apply to anyone who was permitted, as provided by law, to sue as a poor person.

2. If the judgment of the supreme court or court of appeals is in favor of the appellant or plaintiff in error, the clerks shall tax the fee provided herein in favor of the appellant or plaintiff in error, and it shall be their duty to issue fee bills or writs of execution in all cases in favor of the successful party, ... including therein all the costs that have accrued in the supreme court or court of appeals, and receiving for the writs or fee bills the fee now provided by law. ...."

In *State v. Ball*, 158 S.W.2d 182 (Mo. App.1942), a defendant in a criminal case obtained a reversal of his conviction on appeal and thereupon moved to tax certain sums including the $10 "docket fee" provided for by § 13406, R.S.Mo 1939 (the predecessor of § 483.500, RSMo 1986), against the State as costs. The appellate court said: "... that fee and the transcript fee of $3 are fees definitely fixed by statute, and it is the ministerial duty of the clerk of the court to tax such costs." *Id.* at 183[1]. The court went on to hold, however, that such costs could not be taxed against the State. *Id.* at 183. The significance of *Ball* regarding the instant proceeding is that *Ball* held the docket fee constituted "costs."

An alert reader will recognize, of course, that § 483.500, RSMo 1986, refers to "appellant" and "plaintiff in error," appellations not used for parties seeking original remedial writs. Nonetheless, if (as held in *Ball*) the docket fee imposed by the predecessor of § 483.500, RSMo 1986, constituted costs, we are convinced that the docket fee required by Rules 84.24 and 81.04(c) in actions for original remedial writs likewise constitutes costs.

As to whether the Board is within the classification "State of Missouri or its agencies or officials" set forth in *School District of the City of Independence*, 653 S.W.2d at 191[15, 16], we note that in *State ex rel. Milham v. Rickhoff*, 633 S.W.2d 733 (Mo. banc 1982), a mandamus action arising from a suit against the Board of Curators of the University of Missouri and other defendants, the Supreme Court of Missouri, citing *Todd v. Curators of the University of Missouri*, 347 Mo. 460, 465, 147 S.W.2d 1063, 1064 (1941), stated the Board of Curators is a public corporation for educational purposes and an agency or arm of the State. *Milham*, 633 S.W.2d at 735. The Supreme Court in *Milham* quoted with approval the following passage from *Head v. Curators of the University of Missouri*, 47 Mo. 220, 224 (1871), *aff'd*, 86 U.S. (19 Wall.) 526, 22 L.Ed. 160 (1874): "The State established an institution of its own, and provided for its control and government,

through its own agents and appointees." *Milham,* 633 S.W.2d at 735.

*Todd,* cited in *Milham,* was an action by a worker employed by the University of Missouri to recover damages for injuries allegedly sustained when a scaffold on which he was working collapsed. The Supreme Court of Missouri held that a public corporation performing governmental functions is an agency or arm of the State and entitled to the same immunity as the State itself in the absence of express statutory provision to the contrary. *Todd,* 147 S.W. 2d at 1064. The trial court's dismissal of the action on the ground it was barred by sovereign immunity was upheld. *Id.* at 1065[5].

In *Tribune Publishing Co. v. Curators of the University of Missouri,* 661 S.W.2d 575 (Mo.App.1983), a newspaper sued The Curators of the University of Missouri and others over application of the "Sunshine Law." The Western District of this Court said, among other things: "... the 'state' is the level of government involved in the instant case as the University is a 'state' supported institution. The Board of Curators is the entity through which the 'state' functions in governing the University." *Id.* at 584[8].

If, as held in *Milham, Todd* and *Tribune Publishing Co.,* the University of Missouri is an agency or arm of the State, we see no reason why the Board in the instant proceeding is not likewise an agency or arm of the State. The members of the Board are appointed by the Governor with the advice and consent of the Senate (§ 174.060, RSMo 1986), just as the members of the Board of Curators of the University of Missouri (Mo. Const. art. 9, § 9(a) (1945)), the Board in the instant proceeding has perpetual succession (§ 174.040, RSMo 1986), just as the Board of Curators of the University of Missouri (§ 172.020, RSMo 1986), and the powers of the Board in the instant proceeding (§ 174.040, RSMo 1986) are similar to the powers of the Board of Curators of the University of Missouri (§ 172.020, RSMo 1986). For the fiscal year beginning July 1, 1987, and ending June 30, 1988, SMSU and the University of Missouri received operating funds from the State Treasury appropriated by the General Assembly of Missouri in the same appropriation bill. C.C.S.H.B. 3, Laws 1987, pp. 19–26.

We therefore hold that the Board in the instant proceeding falls within the classification "State of Missouri or its agencies or officials" set forth in *School District of the City of Independence,* 653 S.W.2d at 191[15, 16]; consequently, the Board was not required to pay the docket fee provided for by Rules 84.24 and 81.04(c) upon the filing of the petition for writ of prohibition.

Respondent advances other theories in an effort to demonstrate that our preliminary order in prohibition was improvidently issued. Respondent avers he lacked jurisdiction to sustain SMSU's application for change of judge in the underlying case in that the judgment in the underlying case is void. According to respondent, SMSU, the named plaintiff in the underlying case, had no power to institute such action, as only the Board was "statutorily empowered" under § 174.040, RSMo Cum.Supp.1984, to bring such action. Accordingly, says respondent, the judgment of July 31, 1985, is void and cannot support an execution or a writ of garnishment. Thus, insists respondent, he was without jurisdiction over the subject matter of the underlying case including the garnishment proceeding.

Respondent also hypothesizes that granting SMSU's application for change of judge in the underlying case "would have been a useless exercise," as SMSU never effected a levy on Harriman's property in that no proper service of the summons and notice of garnishment was made on American National. Another reason, according to respondent, that granting SMSU's application for change of judge would have been a useless exercise is that respondent lacked jurisdiction over the garnishment proceeding because SMSU failed to timely serve and file exceptions to the answers to interrogatories filed by lawyers representing American National, which omission, says respondent, constituted an abandonment of the garnishment by SMSU.

Nothing in the record furnished us indicates respondent has yet made any rulings in the underlying case reflecting his theories set forth in the two preceding paragraphs. The record does confirm, however, that $26,500 remains to be disbursed in the underlying case, and that disbursal will be determined by rulings of the Circuit Court of Greene County. It is thus obvious that the garnishment proceeding in the underlying case cannot be concluded absent judicial action by either respondent or some other judge. Respondent recognizes as much, as evidenced by a passage in his brief where he urges that "in addition to quashal [sic] of the preliminary order, the cause be remanded to the court below with instructions to Respondent to quash the writs of execution and garnishment; to set aside the default judgment therein and to dismiss [the underlying case] for want of jurisdiction thereof."

We point out that during the pendency of the instant prohibition proceeding in this Court, the underlying case has remained lodged in the Circuit Court of Greene County, thus the underlying case is not here for us to remand to the Circuit Court. Additionally, respondent fails to explain how, on the one hand, he lacks authority to grant SMSU's application for change of judge in the underlying case while, at the same time, he possesses authority to enter an order (a) quashing the writs of execution and garnishment, (b) setting aside the judgment of July 31, 1985, and (c) dismissing the underlying case for lack of jurisdiction.

The possibility that a judge of the Circuit Court of Greene County might ultimately reach one or more of those conclusions in the underlying case is no reason for a holding by us that respondent lacks jurisdiction to grant SMSU's application for change of judge or that granting such application would be a useless exercise. Some judge will obviously have to make whatever rulings are necessary to bring the garnishment action to a conclusion in the Circuit Court of Greene County. What those rulings should be is a subject we need not address, as the issue before us in this prohibition proceeding is simply whether respondent has authority to proceed further in the underlying case or whether he lacks such authority and is obliged to grant SMSU's application for change of Judge per Rule 51.05(e).

Our preliminary order in prohibition of September 2, 1988, is made absolute. Respondent is prohibited from taking any further action in the underlying case except the action specified in Rule 51.05(e).

HOGAN, FLANIGAN, MAUS and GREENE, JJ., concur.

HOLSTEIN, C.J., dissents and files dissenting opinion.

PREWITT, J., dissents and files dissenting opinion.

HOLSTEIN, Chief Judge, dissenting.

I respectfully dissent. The majority holds that a garnishment is the "kind of independent proceeding which does in fact adjudicate rights of individuals, *irrespective of and not conditioned upon what was provided in the original decree.*" (Emphasis added). I believe the above holding is inconsistent with prior decisions of the Supreme Court, as well as other courts of this state.

Our Supreme Court has repeatedly held that a garnishment proceeding is "purely ancillary" and "incidental" to the main suit. *Dunn v. Bemor Petroleum,* 737 S.W.2d 187, 189 (Mo. banc 1987); *State ex rel. Eagle Bank & Trust Co. v. Corcoran,* 659 S.W.2d 775, 777 (Mo. banc 1983); *State ex rel. Bagnell Inv. Co. v. Luten,* 647 S.W.2d 539, 541 (Mo. banc 1983); *State ex rel. Auchincloss et al v. Harris,* 349 Mo. 190, 159 S.W.2d 799, 805 (1942). A garnishment in aid of execution is not the institution of a new suit even though it results in a judgment which finally disposes of all issues and parties. *Seiter v. Tinsley,* 479 S.W.2d 217, 218 (Mo.App.1972). A garnishment cannot be independently maintained. Among the "indispensable prerequisites" to the establishment of every garnishment is the existence and validity of the underlying judgment and execution. *Dunn v. Bemor Petroleum, supra.*

The issues in a garnishment are made up of those raised by the garnishor's denial or exceptions to the answers to interrogatories and the garnishee's response to the exceptions. *State ex rel. Bagnell Inv. Co. v. Luten, supra*, at 541 n. 2; Rule 90.13(e). In this case the "pleadings" have not been completed, and we cannot presume that the only issues will be "[t]he rights of Harriman, his attorneys, and SMSU to the proceeds of [the settlement] checks." Harriman and American Mutual may also attack the validity of the judgment or execution upon which the garnishment depends. At least until a separate trial has been ordered on the limited question of the obligation of the garnishee to the judgment debtor, the garnishment cannot begin to be considered as independent of the original proceeding.

The majority seems to say that because new issues have arisen in this garnishment proceeding, it qualifies as a "civil action." It is the kind of proceeding, not the issues in a proceeding, which qualifies it as a "civil action." One must identify the nature of the proceeding itself to determine if the rights and remedies sought to be enforced are dependent upon the existence of some other suit.

If new issues, without more, qualify a post-judgment proceeding as a "civil action," it is hard to imagine any post-judgment proceeding in which a change of judge under Rule 51.05 is not permitted. If this is the rule, each and every execution, garnishment, sequestration, or scire facias incidental to the main suit in which a new set of fact issues might arise is a "civil action." That result is not within the letter or spirit of Rule 51.05.

More than one execution may be issued at the same time upon the same judgment, and more than one garnishment may be simultaneously issued in aid of an execution. Mo. Creditors'–Debtors' Remedies §§ 2.3, 3.8 (MoBar 1988). If each garnishment is treated as a separate civil action for purposes of change of judge, we face the specter of multiple garnishments in which multiple judges make conflicting decisions regarding the validity of one judgment or one execution. The potential for mischief is too great.

There are several post-judgment proceedings which have specifically been held not to be civil actions within the meaning of the rules or statutes granting the right to a change of judge. A motion for maintenance and suit money pendente lite after judgment, but pending appeal in a dissolution of marriage action, is not a civil action. *Weinbaum v. Weinbaum*, 679 S.W.2d 384, 391 (Mo.App.1984); *Dardick v. Dardick*, 661 S.W.2d 538, 540 (Mo.App.1983). This is so even though a judgment on motions pendente lite "stand upon their own merits and are in no way dependent upon the merits of the issues in the underlying dissolution suit." *Dardick v. Dardick, supra.* A renewal of an adult abuse order is not a civil action, even though new acts of abuse "can be" alleged. *Capps v. Capps.*[1] Finally, and perhaps most analogous to garnishment, a scire facias to revive a judgment is not an "action" even though "it partakes of the nature of a new action ... in that it may be pleaded to." *Sutton v. Cole*, 155 Mo. 206, 55 S.W. 1052, 1053 (1900).

Without restating the facts in the cases cited by the majority in which a proceeding has been held to be a civil action for purposes of Rule 51.05, those cases fall into two categories. The first category is the truly independent cause of action which happens to share a common caption or case number with an associated cause of action. *State ex rel. Interstate Motor Freight System, Inc. v. Hall*, 409 S.W.2d 678 (Mo. banc 1966); *Crain v. Missouri Pac. R.R.*, 640 S.W.2d 533 (Mo.App.1982); *State ex rel. Brault v. Kyser*, 562 S.W.2d 172 (Mo.App. 1978). The second category is the motion to modify a divorce in which the proceeding does not seek to enforce a judgment but to obtain relief from a judgment because of

---

1. 715 S.W.2d 547, 552 (Mo.App.1986). The majority opinion distinguishes *Capps* on the basis of an absence of the need to establish new facts to renew an adult abuse order. *Capps* holds that a renewal order can be based upon new facts or the *continued existence* of circumstances forming the basis of the initial order. *Id.* In fact, the evidence in *Capps* included new threats of abuse. *Id.* at 548–49.

new facts, conditions, or circumstances. *Hayes v. Hayes*, 363 Mo. 583, 252 S.W.2d 323 (1952). A garnishment does not fall within the parameters of either category. Rather, it is an enforcement proceeding entirely dependent and predicated upon a supporting judgment and execution. Thus, a garnishment bears a much greater resemblance to the class of cases cited in the preceding paragraph than to the cases relied on by the majority.

The following analysis of the issues is simple and, I believe, in harmony with the general understanding of our profession relating to when a party is entitled to a change of judge under Rule 51.05. Ordinarily, and in this case, the garnishor is the plaintiff.[2] Having had the opportunity to disqualify the judge as a matter of right within the time provided by Rule 51.05(b) in the original action, and having failed to timely take advantage of that right, the plaintiff waived the right. I would deny the writ of prohibition. Had a separate trial been ordered on the limited question of the garnishee's liability to the judgment debtor, and had the garnishee requested a change of judge, the result might be different; but that question awaits another day.

The majority result in this case may be laudable. The preferable course might be for the circuit judge, in the prudent exercise of discretion, to grant a change of judge as a matter of expediency. Greene County has a number of circuit judges and associate circuit judges available to accept assignment of the case. Thus, it may be that no hardship or delay would be occasioned by granting the change of judge in this case. The same cannot be said in other cases or of all counties and circuits in the state.

The rule enunciated by the majority is in conflict with prior decisions of the Supreme Court and other courts of this state as cited herein. Notwithstanding my high regard for the opinion of my brother judges, I enter my dissent.

**2.** What's in a name? That which we call a rose By any other name would smell as sweet.

PREWITT, Judge, dissenting.

I respectfully dissent. It appears to me that the only real disputes thus far developed are between the plaintiff and defendant in the underlying action and perhaps the defendant's wife. Had there been a genuine issue between a garnishee and plaintiff, such as whether a garnishee is indebted to the defendant, then I would agree with the majority. Such a dispute would be like an independent action, and, were it not for the garnishment, might require a separate civil proceeding between the defendant and the garnishee.

However, here I see no "civil action" under Rule 51.05(a) which would call for the disqualification of the judge. With these limiting comments, I concur in the dissent of Judge Holstein.

Shakespeare, *Romeo and Juliet* II, ii, 43.